## SABBATINO et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

Nos. 209–314.

1. **Bribery ☞1(2)—Attempt to bribe federal prohibition officers held punishable as an "attempt to induce violation of lawful duty."**

Attempt to bribe federal prohibition officers, whose duty it is to supervise issuance of permits for withdrawing whisky from bonded warehouses, to connive at procurement of forged permits, *held* punishable as attempt to induce violation of lawful duty, under Criminal Code, § 39 (Comp. St. § 10203).

2. **Conspiracy ☞45—Permitting federal prohibition officers to testify as to nature of duties and manner of their appointment held not error.**

In prosecution under Criminal Code, §§ 37, 39 (Comp. St. §§ 10201, 10203), for conspiracy to bribe federal prohibition agents, it was not error to permit such officers to testify as to the nature of their official duties and method of their selection, regardless of how minor their duties might be.

3. **Criminal law ☞772(6)—Instruction on entrapment held favorable to defendants.**

In prosecution for conspiracy to bribe federal prohibition agents, in violation of Criminal Code, §§ 37, 39 (Comp. St. §§ 10201, 10203), instruction that, if defendants did not desire to do anything wrong and were persuaded into it by the officers for purpose of entrapping defendants, defendants should be acquitted, *held* favorable to defendants on issue of entrapment, where evidence clearly proved conspiracy, which is itself violation of section 39.

4. **Conspiracy ☞48—Evidence of participation in conspiracy to obtain whisky from bonded warehouse by person in charge thereof held sufficient to go to jury.**

In prosecution under Criminal Code, §§ 37, 39 (Comp. St. §§ 10201, 10203), for conspiracy to bribe federal prohibition agents to connive at withdrawal of whisky from bonded warehouses on forged permits, circumstantial evidence of participation by defendant who had charge of warehouse *held* sufficient to go to jury.

5. **Criminal law ☞424(1)—Conspirator may be convicted by own acts or declarations after conspiracy terminated.**

Though acts or declarations of one conspirator, made after conspiracy has ended, are not admissible against others, conspirator may be convicted by his own acts, no matter when those acts occurred.

In Error to the District Court of the United States for the Eastern District of New York.

Ralph Sabbatino and others were convicted of conspiracy to bribe federal prohibition officers, in violation of Criminal Code, §§ 37, 39 (Comp. St. §§ 10201, 10203), and they bring error. Affirmed.

Samuel S. Koenig, of New York City, for plaintiff in error Gross.

Robert H. Elder, of New York City (Otho S. Bowling, of New York City, of counsel), for other plaintiffs in error.

Ralph C. Greene, U. S. Atty., and William A. De Groot, Asst. U. S. Atty., both of Brooklyn, N. Y.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge. [1] The parties seeking review, whom we shall call defendants, were indicted for a conspiracy (Criminal

Code, § 37 [Comp. St. § 10201]) to commit an offense against the United States, viz. violate the statute (Criminal Code, § 39 [Comp. St. § 10203]) which makes it criminal to promise, offer, or give money to "any person acting for or on behalf of the United States in any official function under or by the authority of any department * * * of the government thereof," with intent to "induce him to do or omit to do any act in violation of his lawful duty." That there *was* a conspiracy, having for its legal object the bribing of persons who are commonly called "federal officers," and for its practical objective the procuring of whisky out of bonded warehouse, by the connivance of the bribe takers, and its profitable sale to the thirsty, is entirely plain; the questions at bar worthy of consideration, are only whether *all* the defendants were convicted secundum regula.

The persons to be bribed were two. One gives his title as "Field Supervisor in the Prohibition Unit of the Internal Revenue Bureau, Treasury Department," and the other "Special Assistant to the State Director for New York State," in the same "Unit." The duties and positions of both are set forth at large in the indictment. Both testified very freely as to what they officially did and were employed to do at the times of the indictments, and that testimony gives rise to two objections: (1) That it was no offense under the statute (Criminal Code, § 39) to bribe such men; and (2) it was error to permit them to tell the jury who and what they were.

The first argument is based on such cases as United States v. Gibson (D. C.) 47 Fed. 833, In re Yee Gee (D. C.) 83 Fed. 145, and United States v. Boyer (D. C.) 85 Fed. 425, and urges that the bribes offered were not to induce the officer "to do any act in violation of his lawful duty"; i. e., what they were asked to do was, however, evil per se, not official. The standard illustration is from the Gibson Case, where a gauger was hired to set a distillery on fire.

This conclusion cannot be justified by the facts. It was the business of the men in question to exercise supervisory powers over the granting or issuance of documents called "permits" and "confirmations," without which no whisky could be lawfully withdrawn from warehouse, and the method of proposed issuance was the simple but effective one of forging the name of the higher official whose signature was a prerequisite for one or both of the necessary papers. Further, the proposed permits were to be drawn in the name of a well-known chemical firm as "permittee," and so the whisky would leave the warehouse without exciting suspicion on the part of the minor revenue officials there stationed, but it would never get to its pretended destination. Permits and "confirmations" are plainly official acts and documents, and we hold it too clear for further discussion that to attempt the procurement of forged papers of this kind through or by means of officials exercising supervision thereof is within the strict letter of the statute.

[2] The second branch of argument is based on Heaton v. United States (C. C. A.) 280 Fed. 697, and it is urged that to permit the persons intended to be bribed to state at large their official duties, and the method of their selection for the performance of the same,

was somehow injurious to all the defendants. This injury is thought to have arisen because (so far as we can see) what was told about them made them seem very much more important than they really were; but (the argument continues) analysis of the testimony shows that these two men (jointly or severally) had no "matter before them in an official capacity wherein their decision could be influenced within the meaning" of Criminal Code, § 39.

This must be based upon a misreading of our decision in the Heaton Case, where we specifically pointed out (page 699) that in the language of the statute a "person acting for or on behalf of the United States in any official" capacity or function, may be any employee, however minor his duties. The duties of these men under present legislation could hardly be called minor, for they were both acting in very confidential capacities. Indeed, their capacity for evil strikingly resembled that of a confidential secretary or clerk, who, if he skillfully forges his employer's signature to a check, would be an apparently proper person to possess it or cash it. So far from the Heaton decision vitiating this evidence, we think that case peremptorily required it.

[3] Because, however, the two government agents above referred to were not criminals, but were acting as detectives, it is urged upon us that their acts constituted an "entrapment" and deprived the defendants or some of them of a locus pœnitentiæ. In strictness of law we do not perceive that this point is rested upon any assignment of error. It is difficult to see how it could be, for at the close of the trial the court was requested to charge that:

"Where the violation of the law originated with a person in the employ of the government, and he was acting for the purpose of entrapping the defendant, the defendant cannot be convicted of the offense which he was thus induced to commit."

Upon this request the court charged:

"If the jury finds in this case that the defendants did not desire to do anything wrong, and were persuaded into it by the act of the government employees for the purpose of entrapping the defendants, and the government employees originated and started it, of course it is improper, and the defendants should be acquitted."

It is to be remembered that this indictment is for a conspiracy, and that the evidence clearly proved that the scheme 'began with an offer by one of the defendants to one of the government officials which was itself a violation of Criminal Code, § 39. It is difficult to see how after this (concert by a plurality of schemers having been proven) there could have been any entrapment or denial of locus on the part of the government. The charge of the court certainly gave to the defendants and all of them all, if not more, than the law permitted, because the court apparently assumed that this was a borderline case and left the matter to the jury. United States v. Lynch (D. C.) 256 Fed. 983. The general law on this question is well known, and is we think excellently stated with abundant citation in 16 C. J. 88, § 57. Indeed, consideration of this record seems to show this as one of the instances where the use of Criminal Code,

§ 37, and of an indictment for conspiracy rather than for the substantive offense, is well justified by the history of crime.

[4] Finally it is insisted on behalf of the defendant Ralph Sabbatino that the whole evidence shows him as insufficiently connected with the acts of the other defendants to justify denouncing him as a conspirator. This man was in actual charge of the warehouse where the whisky was. It is true that he is not shown as taking part in any of the earlier efforts of the schemers; he certainly took no personal part in either making arrangements with the pretended dishonest government officers or in handing to them the money which they actually received shortly before arrests made. But it was, we think, very fairly left to the jury as to whether his acts in respect of the papers—i. e., permits, etc.—obtained from the prohibition officers did not constitute circumstantial evidence showing beyond a reasonable doubt that he belonged to the ring, scheme, or conspiracy which, as above pointed out, plainly existed. We think there was enough evidence to go to the jury, and perceive no reason to be even dissatisfied with the verdict of that body.

[5] Under this head of argument the well-known doctrine of the Logan Case, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429, is invoked. That decision does not apply here, for, admitting fully that the acts or declarations of one conspirator, made after the conspiracy has ended, are not admissible against the other conspirators, and admitting (but not holding) that many, if not most, of the acts of Ralph Sabbatino given in evidence occurred after the conspiracy had ended, it remains untrue that a conspirator may not be convicted by his own acts, no matter when those acts occurred. The prohibition is against affecting a plurality by the acts of one, committed after the scheme has terminated either in success or failure; but the one always remains affected by his own acts. That is the inexorable law of all life.

The judgments are severally affirmed.