## LEE DIP v. UNITED STATES.
### No. 8527.

Circuit Court of Appeals, Ninth Circuit.
Nov. 8, 1937.

Rehearing Denied Dec. 9, 1937.

Clifford A. Russell and A. M. Mull, Jr., both of Sacramento, Cal., for appellant.

H. H. McPike, U. S. Atty., and Val Hammack and A. J. Zirpoli, Asst. U. S. Attys., all of San Francisco, Cal.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appellant was convicted under an indictment found pursuant to 21 U.S.C.A. § 174,[1] charging the felonious concealment of approximately 45 grains of smoking opium.

The opium was found in jars in the bathroom of appellant's living quarters. It is claimed that error was committed in the reception of testimony concerning the finding of other narcotics on the person of another Chinese, and in the admission of these narcotics in evidence.

It was shown that a federal narcotic agent, in company with other officers, searched the premises of the appellant in the town of Walnut Grove. The appellant was

---

[1] "If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

not present at the time of the search. His premises consisted of a store in the ground floor and living quarters above occupied by him and his family. ·Soon after the officers entered the store, one Chin Fook came into the place through a back door. He was carrying a bag. He was seized by the officers, whereupon he dropped the bag and attempted to dispose of some articles which he had in his pockets. These articles proved to be bindles of morphine, cocaine, yenshe, and opium. In the bag were two opium smoking pipes and four opium smoking bowls. After finding these articles on Chin Fook, the officers searched the upstairs living quarters. Here were found on the kitchen table Chinese scales of a type customarily used in weighing narcotics; one cup of the scales containing opium. With the scales were several pieces of green and white cellophane paper which were identical in texture and appearance with the papers in which were wrapped the bindles of narcotics found on Chin Fook. There were other cellophane papers of the same type on the dresser in appellant's bedroom. This paper was of the sort ordinarily used in wrapping narcotics. In addition to the jars containing the 45 grains of smoking opium which were the subject of the indictment, there were also found in the living quarters some jars of shee water and a paper cutter. In a cigar box in appellant's desk in the store below were discovered connections for opium pipes.

Testimony concerning the incident with Chin Fook was admitted over appellant's objection. He excepted also to the introduction in evidence of the various articles found on the other Chinese; these being the opium pipes and the bindles of morphine, cocaine, and opium. Reversal is asked on the ground that there was no evidence tending to connect appellant with the narcotics found on Chin Fook, and on the further ground that the admission of this testimony and of these articles tended to show the commission of crimes other than that for which the appellant was on trial.

There was evidence that appellant and Chin Fook were partners, at least in the conduct of a nearby gambling house, and it was shown that Chin Fook had a key to appellant's store. Chin Fook was apprehended in the act of entering the premises of appellant, and had on his person at the time the articles and narcotics introduced. These circumstances, taken in connection with the incriminating facts disclosed in the search of appellant's place, were such as to permit of an inference that there was a concert of action between the two Chinese in the possession and concealment of narcotics. Had the two been jointly indicted, the evidence complained of would have been properly admitted as against both. No conspiracy was charged, but there was sufficient evidence from which to infer that one existed in fact. Where there is proof of concert of action between two or more persons in the commission of an offense, the acts and declarations of one are admissible against the other, although no conspiracy has been charged. Robinson v. United States (C.C.A.9) 33 F.(2d) 238; Sprinkle v. United States (C.C.A.4) 141 F. 811; Vilson v. United States (C.C.A.9) 61 F.(2d) 901; Cossack v. United States (C.C.A.9) 82 F. (2d) 214.

■ It was contended on the trial, and indeed is argued here, that the mere finding of opium in the quarters where appellant lived was not proof that the narcotic was in his possession, since numerous other parties, members of the family and relatives of the appellant, were shown to have occupied the living quarters along with him, and the opium might as well be supposed to have been theirs as his. The evidence that Chin Fook entered the appellant's store having on his person narcotics, including opium, coupled with the other circumstances shown, and with the fact that Chin Fook was a partner of appellant and had a key to his store, logically tended to establish the offense charged; namely, that the opium found in the bathroom was appellant's opium and was in his possession. Appellant was not charged with the concealment of the narcotics taken from Chin Fook, and presumably the court in his instructions to the jury (they are not before us) properly safeguarded the rights of appellant in this respect by pointing out to them the purpose and limited effect of the testimony objected to.

■ The appellant testified in his own behalf. On direct examination he was asked by his counsel whether he had ever told the narcotic agent or another witness who had testified for the government that he bought or sold narcotics. On cross-examination he was asked: "Did Mr. Lachenauer (the narcotic agent) ever ask you or state to you that you had sold Lee Mon Foo a lot of narcotics? Do you remember that?" It is contended that this was improper

804

cross-examination. The question was proper, since it related to a subject inquired about on direct examination.

It is claimed that the offense was not proved, but there is ample evidence, by admissions and otherwise, to establish the commission of the crime.

Affirmed.