## BRAATELIEN et al. v. UNITED STATES.
### No. 12841.

Circuit Court of Appeals, Eighth Circuit.

March 8, 1945.

Rehearing Denied May 16, 1945.

890

Francis Murphy, of Fargo, N. D., for appellants Olaf Braatelien and Sam Semingsen.

Halvor L. Halvorson, of Minot, N. D., for appellant Olaf Braatelien.

P. W. Lanier, U. S. Atty., of Fargo, N. D. (Joseph P. Stevens, Asst. U. S. Atty., of Towner, N. D., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Olaf Braatelien, O. W. Bergen, James Van Berkom, Sam Semingsen, Martin Fossom, Leo Mahoney, and G. Bailard were indicted for conspiring in violation of section 88, Title 18, U.S.C.A. to defraud the United States by corruptly administering and procuring the corrupt administration of the Act of Congress approved June 22, 1938, as amended March 4, 1940, 11 U.S.C.A. §§ 201 to 203, inclusive), commonly called the Frazier Lemke Act, being an amendment to the National Bankruptcy Act of 1898. Because of his absence, Bergen was not tried; the charge was dismissed against Van Berkom; Fossom, Mahoney, and Bailard were acquitted by the jury; Braatelien and Semingsen were convicted and sentenced, and they appeal.

During the course of the proceeding the court overruled a motion to quash the indictment, a demurrer to the indictment, a demand for a bill of particulars, motions for a directed verdict, a motion in arrest of judgment, a motion for a new trial, and objections to certain evidence introduced by the government. No rulings of the court other than those here enumerated are assigned as error.

The grounds on which the judgments are assailed on appeal are summarized by counsel substantially as follows:

(1) The indictment was bad because it is too general, vague and confusing.

(2) The appellants were entitled to a bill of particulars.

(3) The court abused its discretion in permitting the government to introduce a large volume of testimony concerning the acts and declarations of Bergen, the absent conspirator.

(4) The evidence was insufficient to support the verdict; and counsel for Braatelien make a further contention.

(5) That he, Braatelien, is a judicial officer and is not subject to criminal prosecution for acts committed by him in connection with the administration of the Frazier Lemke Act.

The venue was laid, the indictment was returned, and the case was tried in the district of North Dakota, Northwestern Division. The indictment charged that the conspiracy began in the late summer or early fall of 1941 and continued thereafter until the date the indictment was returned, January 14, 1944.

The record shows that Northwestern North Dakota is an agricultural region, and that for ten to twelve years prior to 1941 a continuous drought had resulted in poor crops throughout the district. The farmers received little or no income from their land during that period and many of them had incurred debts which they were unable to pay. In at least some cases farms were encumbered by mortgages and delinquent taxes for more than their market value. The drought abated in 1941, and since then the financial condition of farmers has improved.

The indictment cannot rightly be condemned as too general, vague and confusing. After charging that the appellants and others unlawfully conspired to defraud the United States by corruptly administering and procuring the corrupt administration of the Frazier Lemke Act, the provisions of that Act are summarized, the part which appellants had in administering it are stated, and the wrongful acts of the conspirators are described.

The indictment charges that the Frazier Lemke Act was passed by Congress for the purpose of enabling financially distressed farmers to rehabilitate themselves in the manner provided therein. The Act authorizes the appointment by the District Court of a Conciliation Commissioner in each county of the district. A farmer desiring to take advantage of the law initiates the proceeding by filing with the clerk or leaving with the commissioner a petition stating that he is unable to pay his debts as they mature and that it is desirable to effect a composition with his creditors or an extension of time for payment of his debts. The petition must be accompanied with schedules and thereafter an inventory must be filed. The petitioner may then make a proposal of composition or extension, which, if accepted and confirmed by the court, becomes binding. If not accepted, a second form of relief is provided. The farmer may then amend his petition and ask to be adjudicated a bankrupt.

Upon the filing of the petition the farmer and all his property, wherever located, become for the purposes of the Act subject to the jurisdiction of the court.

When the petitioner is adjudicated a bankrupt the conciliation commissioner acts as referee. At the first meeting of his creditors the farmer debtor may ask that his property be appraised, whereupon the commissioner shall appoint disinterested appraisers. The duty of such appraisers is to appraise all of the debtor's property at its then fair and reasonable market value. When the conditions of the Act have been complied with the court may stay all judicial proceedings in any court against the farmer or his property for a period of three years, during which time the farmer may retain possession of any or all of his property under the supervision of the court by paying a reasonable rental therefor.

Persons filing petitions under the Act are required to pay to the clerk of the court a fee of $10 which is covered into the treasury of the United States. In each case the commissioner is paid for his services a fee of $25 out of the treasury of the United States, and when acting as referee he is allowed a further fee of $35 to be paid out of the bankrupt's estate. The Act further provides that the commissioner upon request shall assist any farmer in preparing and filing a petition, and in all proceedings following the farmer debtor shall not be required to be represented by an attorney.

During the period covered by the conspiracy Braatelien was the duly qualified Conciliation Commissioner for Divide County, North Dakota, and Semingsen and other of the defendants were appointed by him to appraise the property of farmer debtors adjudged bankrupts. At that time large numbers of the farmers in Divide and surrounding counties of North Dakota were indebted to the Federal Land Bank of Saint Paul and to the United States through its agencies, the Farm Credit Administration and the Farm Security Administration, for money loaned to aid them in the operation of their farming interests.

The indictment further charges that the object of the conspiracy was to promote a large volume of business for Braatelien as conciliation commissioner and for the financial gain and profit of all the conspirators; that to accomplish this purpose the conspirators planned to take advantage of the large number of farmers in North Dakota, particularly in Divide County, who were indebted to the Federal Land Bank of Saint Paul and to the United States through its said agencies; that they would and did solicit, counsel, induce, and procure many farmers, irrespective of whether they were insolvent and unable to meet their debts as they matured, to file petitions under the Act, by representing to the farmers that their debts to said agencies would either be wiped out or greatly reduced; by misrepresenting the purpose, scope and benefits lawfully to be derived from said Act; and that they would and did aid, abet, advise and procure many farmers in anticipation of filing under the Act to prefer creditors, to omit and conceal property from their schedules, to undervalue their property, and to transfer their property to relatives, to the end that in many instances the only indebtedness scheduled by the farmers was that due the Federal Land Bank of St. Paul and the United States. The conspirators further planned and did represent to the farmers that they, the conspirators, would control the appointment of appraisers and the appraisal of their property; that their property would be and it was appraised at valuations lower than its then fair market value, and that they were advised by the conspirators that they

could buy back their property for less than its then market value.

A further charge is that the conspirators would and did represent to the farmers that in order to obtain the benefits of the Act they would be required to pay the conspirators for their assistance, and for the assistance of an attorney designated by them, various sums of money over and above the fees provided for by the Act; they did not advise the farmers that it was unnecessary under the Act to be represented by an attorney; and they did demand and collect from the persons so solicited sums of money, thus depleting the assets of the farmers and resulting in financial gain to the conspirators and loss to the farmers and to their creditors.

It is further charged that in accordance with the plan Semingsen and other of the conspirators were thereafter appointed appraisers of the property of persons solicited and induced to file petitions under the Act; that such appraisers did appraise the property of farmers adjudged bankrupt for less than its then market value; and that Braatelien, as commissioner, confirmed such false appraisals, and thus, contrary to his oath of office, failed to administer the Act according to law and in obedience to his oath of office.

Five overt acts are enumerated and described. No particular complaint is made in regard either to their sufficiency or to their clarity.

The contention of the appellants is that by the terms of the indictment it is uncertain whether the fraud charged consisted of a dishonest manipulation of the law because it operated to divest certain named creditors or the United States of property.

■ The appellants were entitled to be informed of the charge against them with sufficient detail to enable them to make their defense and to protect them in a plea of former jeopardy in the event of a second prosecution for the same offense, Ford v. United States, 9 Cir., 10 F.2d 339, 343; but when the offense charged is conspiracy, as it is in the present case, it need not be stated with that particularity that would be required in an indictment charging the substantive offense. Ford v. United States, supra; United States v. Manton, 2 Cir., 107 F.2d 834, 838; Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278. The evidence to support the charge need not be set out. Mercer v. United States, 3 Cir., 61 F.2d 97. The conspiracy here is adequately charged and with sufficient clarity to satisfy the requirements of the law. Compare Langer v. United States, 8 Cir., 76 F.2d 817; Crawford v. United States, 212 U.S. 183, 29 S. Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392.

The appellant Braatelien demanded a bill of particulars setting forth the specific wrongful acts charged to have been done by him, as to time, place and names of persons with whom he conspired, and requesting that the files and records in connection with his administration as conciliation commissioner and acting referee be made available to him.

At the time of the trial it appeared that Braatelien had been suspended from the office of conciliation commissioner, but that the files and records kept by him as commissioner were public property and accessible to him at all proper times. Even after exhibits were withdrawn from the files in the clerk's office and introduced in evidence, they were made available to counsel under reasonable arrangements for their proper preservation.

■ In the first part of his motion for a bill of particulars Braatelien demanded that the wrongful acts committed by him should be specified with the names of persons and places. The wrongful act charged was conspiracy to defraud. Any further specification of facts could consist only of evidence and names of witnesses. Having been conciliation commissioner during the period covered by the indictment, he must have been familiar with the record made by himself in every Frazier Lemke case administered by him during that period. He could not be prejudiced by a refusal to specify the particular cases relied upon by the government in advance. Further, the conspiracy was a continuing one and the government should not ordinarily be limited in its evidence by a bill of particulars to specific overt acts. When the facts are detailed in a bill of particulars he who furnished it will be confined by the court to the proof of the facts so specified. Dunlop v. United States, 165 U.S. 486, 491, 17 S.Ct. 375, 41 L.Ed. 799; United States v. Adams Express Co., D.C.Iowa, 119 F. 240; United States v. Pierce, D.C.N.Y., 245 F. 888, 890. Moreover, a motion for a bill of particulars is addressed to the sound discretion of the court and, unless it is made to appear that this discretion

has been abused, the ruling will not be reversed. Hartzell v. United States, 8 Cir., 72 F.2d 569, 575; Pines v. United States, 8 Cir., 123 F.2d 825, 829.

Appellants next urge that the court erred in receiving over their objections testimony concerning the acts and declarations of O. W. Bergen, the absent conspirator, said in the briefs to be a fugitive. The record discloses that Bergen is a cousin of Braatelien and that he was the active solicitor among the farmers during the period covered by the conspiracy, collecting money from them and inducing them by his representations to file petitions under the Frazier Lemke Act.

Upon the trial several farmers testified that when Bergen solicited them to file petitions under the Act with Braatelien he, Bergen, made statements which, if true, implicated Braatelien in the conspiracy. All such declarations were objected to as hearsay because made in the absence of Braatelien. The court admitted the testimony on condition that evidence establishing the conspiracy and Braatelien's connection with it would be shown. The order of proof was a matter wholly within the discretion of the trial court. Tingle v. United States, 8 Cir., 38 F.2d 573, 575; United States v. Manton, 2 Cir., 107 F.2d 834, 844. It is the law, also, that when a conspiracy is established prima facie everything said or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said or done by every one of them, and is admissible against each of them. 11 Am.Jur., Conspiracy, § 40. The declarations of each of the parties is a part of the res gestae. Wiborg v. United States, 163 U.S. 632, 657, 16 S.Ct. 1127, 1197, 41 L.Ed. 289. Each conspirator is in law a partner and agent of every other member of the conspiracy. Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260, L.R.A.1918C, 497, Ann.Cas.1918B, 461.

Declarations of a conspirator, however, made in the absence of an objecting defendant, can not be admitted against him when independent evidence is lacking to show the existence of the conspiracy and defendant's connection with it, but it is not necessary to show by independent evidence that the conspiracy was criminal or otherwise unlawful. Hitchman Coal & Coke Co. v. Mitchell,

supra; Morrow v. United States, 8 Cir., 11 F.2d 256.

The objection to such evidence was renewed later in the trial and, as we think, properly overruled. Assuming that a secret combination existed between the appellants and Bergen, the evidence was sufficient to warrant the jury in finding that Braatelien was connected with it and, therefore, sufficient to justify the admission of the declarations of Bergen against him. Bergen and Braatelien are cousins and they were associated and cooperated during the progress of the conspiracy, and Braatelien sent farmers inquiring about the benefits of and the procedure under the Act to Bergen. See Smith v. United States, 8 Cir., 284 F. 673, 680; Wiborg v. United States, supra; United States v. Nardone, 2 Cir., 106 F.2d 41, 42. The evidence offered to establish the conspiracy prima facie will be discussed in the following paragraphs.

The sufficiency of the evidence to support the verdict is next challenged. The question was raised in the trial court by motions for a directed verdict, all of which were overruled. Under these circumstances in reviewing the record we may not weigh the testimony or determine the guilt or innocence of the defendants. We must take that view of the evidence most favorable to the government and sustain the verdict of the jury if there be substantial evidence to support it. Burton v. United States, 202 U.S. 344, 373, 26 S. Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Egan v. United States, 8 Cir., 137 F.2d 369, 375–6; United States v. Manton, supra; Beland v. United States, 5 Cir., 100 F.2d 289. The existence of the conspiracy and the participation of the defendants need not be established by direct proof. Circumstantial evidence is sufficient when the facts and circumstances are such as legitimately tend to sustain an inference of their existence. " * * * generally, direct proof of a criminal conspiracy is not available and it will be disclosed only by a development and collocation of circumstances." United States v. Manton, supra, 107 F.2d 834 at page 839.

To conspire to defraud the United States means among other things "to interfere with or obstruct one of its lawful governmental functions" by any dishonest means. "It is not necessary that the government shall be subjected to property or

pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation" or otherwise. Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968; Langer v. United States, supra.

Here the evidence upon which the verdict is based was circumstantial. The testimony comprehends the activities of Braatelien, Semingsen, and Bergen in cases involving the administration of the Frazier Lemke Act during the period covered by the indictment. During that period 177 cases were filed with Braatelien as conciliation commissioner, most of which were solicited by Bergen and in approximately 100 of which Semingsen was appointed an appraiser. Their association and co-operation are shown by numerous circumstances. When inquiry concerning the operation of the Act was made to Braatelien by financially distressed farmers, he frequently referred them to Bergen. Semingsen sometimes accompanied Bergen on his trips to solicit farmers. Braatelien went with Semingsen frequently when appraisals were made. Sometimes appraisals were made in as many as ten cases in one day.

In 1941 Bergen (who was not a lawyer) was introduced by Braatelien to a lawyer whom Bergen then employed to handle the farmers' petitions at a rate of $50 for each case. For his services Bergen collected from the farmers from $88 to $125 out of which he paid the attorney.

To establish the conspiracy and to prove that the motive of the conspirators was to increase the business of Braatelien as conciliation commissioner, thereby augmenting his fees and enriching Bergen and Semingsen, and that in furtherance of their objectives the conspirators did advise and persuade farmers (1) to file petitions under the Act; (2) to prefer creditors; (3) to omit property from their schedules; (4) to undervalue their property; (5) to transfer their property to relatives; and (6) to show that fraudulent appraisals were made, the government introduced the testimony of some 25 of the 177 farmers who filed petitions under the Act together with the record of the proceedings in their several cases.

The first of the farmer witnesses to testify was Mrs. Sarah Joyce, a widow. Mrs. Joyce owned and operated a farm of 240 acres, and she rented and operated in addition thereto 570 acres. Except a combine which she had recently purchased at a cost of about $1,000 the personal property on the farm belonged to her daughter. She was indebted to the Federal Land Bank for approximately $5,000 secured by a mortgage on her land, and she owed several hundred dollars to local creditors. In October, 1941, she had already realized from her crops for that season $4,490 and she had not yet sold her flax seed nor settled all of her rentals.

In October, 1941, Mrs. Joyce called at Braatelien's office to consult him about a personal matter, and while there she asked him to explain to her the Frazier Lemke Law and to advise whether it would be wise for her to take advantage of it. She called on him two or three times and told him about her property and her debts, especially that she was indebted to her daughter. He told her that he thought it would be a good thing for her to take advantage of the law; that she could adjust her debts; that her land would be appraised at about $1,500 by local men whom he would send out to appraise it; and that some one would be out in a few days to list her property. He also advised her that she could transfer the combine to her daughter. In a few days Bergen called on her and listed her property. He advised her to transfer the combine to her daughter and to pay her local creditors. He omitted the combine and her money from the lists made for the purpose of preparing her schedules.

Persuaded, as she testified, by the representations made to her by Braatelien and Bergen she decided to file her petition. She paid Bergen $88, transferred the combine to her daughter, invested $1,875 in government bonds in her daughter's name, and on November 10, 1941, went, under the direction of Bergen and Braatelien, to the office of the attorney employed by Bergen and signed and verified her petition and schedules prepared from data furnished by Bergen.

Thereafter her property was appraised at $1,981, which upon review was raised to $2,400 by the court, and she redeemed by depositing that amount with Braatelien as conciliation commissioner.

There were minor variations in the testimony of the other farmer witnesses, but the pattern was similar in most cases. Bergen solicited the business, listed the

farmers' property for their schedules, omitting personal property, advising the payment of local creditors, and explaining the advantages to be gained through low appraisals. Bergen went directly to the farmers in most instances, but some of them who first called on Braatelien were advised to go to see Bergen. The testimony is too voluminous to be recited in detail; but upon the whole record there can be no doubt that the court properly submitted the issues to the jury, and that the evidence supports the verdicts.

 Where the accused have a legal responsibility in the premises with some interest in the accomplishment of the plan of action, as did Braatelien and Semingsen in the present case, if they are aware of the steps taken by others to attain their purpose, and if they know that such activities are illegal, and if such activities are so numerous as to constitute a course of business, or so related as to constitute a system of unlawful conduct continuing over a period of time, then a jury upon evidence of such facts will be warranted in finding them guilty as conspirators. Direct Sales Co. v. United States, 319 U. S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674; Egan v. United States, 137 F.2d 369 at page 378; Alexander v. United States, 8 Cir., 95 F.2d 873, 878. Such is the evidence in this case. Although a single corrupt proceeding under the Act might not be sufficient to warrant an inference of conspiracy among the participants, numerous cases participated in by the same parties, and all following the same outline or pattern, are sufficient to sustain such an inference.

Finally, Braatelien contends that he was not subject to criminal prosecution for the acts charged to have been done by him because all such acts were committed by him in his judicial capacity in the performance of his duties as conciliation commissioner. It is true that as a general rule a judge can not be held criminally liable for erroneous judicial acts done in good faith. 30 Am.Jur., Judges, § 52. But he may be held criminally responsible when he acts fraudulently or corruptly. Judicial title does not render its holder immune to crime even when committed behind the shield of judicial office. The sufficient answer to this defense is that Braatelien was not indicted for an erroneous or wrongful judicial act. He is charged with conspiracy to defraud the United States by corruptly

administering or procuring the corrupt administration of an Act of Congress. The crime charged is distinct from his official acts. It might have been consummated without the performance of a single judicial act on his part. The crime was complete when the unlawful agreement was made and an overt act was consummated by any one of the conspirators, even though such overt act be not one laid in the indictment. United States v. Manton, supra; United States v. Downing, 2 Cir., 51 F.2d 1030, 1031.

For the foregoing reasons, the judgments appealed from are affirmed.