### UNITED STATES v. KENDALL.
### SAME v. WOJCIK et al.
### Nos. 9338, 9340.

Circuit Court of Appeals, Seventh Circuit.
Dec. 17, 1947.

Rehearing Denied Feb. 2, 1948.

Henry L. Balaban and Morton Lewis, both of Chicago, Ill., for appellants.

Otto Kerner, Jr., U. S. Atty., and Nathan M. Cohen, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellants were convicted of conspiracy to issue counterfeit sugar ration stamps and impede the sugar rationing program by creating a black market in sugar. Two of them, Wojcik and Schultz, relied principally on the defense of entrapment and assert the same defense before this court. The third, Kendall, contends that the verdict was manifestly against the evidence, and asserts further error as to jury instructions, admission of evidence, and improper cross-examination.

Prior to the calling of a jury and trial of the cause, hearing was had by the court on motion of appellants Wojcik and Schultz to suppress evidence on grounds of entrapment. The motion was overruled and trial of the cause proceeded.

The record on appeal shows substantial evidence to support the following facts. Wojcik had in her possession glass plates which could be utilized in preparing the plates from which counterfeit sugar ration coupons could be printed. After some unsuccessful attempts to persuade a friend engaged in the printing business to join her in a "shady deal," she telephoned one William Teeters and they arranged to meet. At this meeting she showed him some stamps and described the possibilities of making money by having such stamps printed. Teeters then disclosed the scheme to the F.B.I., and arrangements were made for an agent, Cleary, to be nearby and observe a meeting of Teeters, Wojcik and Schultz, without the knowledge of the latter two. Schultz there described the plan and stated that he and Wojcik had the necessary plates. Teeters agreed to meet them the following day and bring along a printer friend, "Tony." This so-called printer, Tony, was in fact another Government agent, O'Halloran. Kendall, Wojcik and Schultz were all present at this meeting with Teeters and O'Halloran, and Cleary again in the background. Schultz described what they wanted done, and O'-Halloran agreed to undertake the job for $500. Kendall's only conversation at this meeting was a question whether O'Halloran could put the United States Eagle on the back of the coupons. All parties agreed to meet again the same afternoon when the first $250 would be paid to O'Halloran. At this second meeting, at Schultz' direction, Kendall paid over the $250 to O'Halloran and Wojcik gave him the glass plates. O'Halloran then signalled a third Government agent who was watching from a short distance away; this agent arrested the three appellants. On the trip to the city jail, in response to a question to Kendall as to what he was to gain from his investment of $250, Kendall stated that he was to receive 20% of the stamps.

This, in brief, is the evidence upon which the Government relied to obtain the conviction and to sustain it on this appeal. The basic facts as to the various meetings, the scheme to counterfeit the stamps, using the glass plates in the process, the payment of the $250 to the supposed printer, are not and could not well be denied. However, appellants presented different versions of these facts. Wojcik and Kendall both testified. The former stated that the scheme originated with Teeters who had the plates originally and gave them to her to hold for him; that she called a printer and explained to him and he refused to have anything to do with it because it was dangerous, whereupon she became frightened and tried to withdraw but Teeters threatened to get her into trouble; that she then asked Schultz to get the $250 and he asked Kendall to lend it to him, but Kendall did not know what it was for, and there was never any agreement between them that he should have 20%. Kendall also testified that the $250 he turned over to O'Halloran was a loan to Schultz who told him Rose (Wojcik) needed it because she was in a little trouble, and also that he needed it in his business for some advertising. He denied that there was any discussion of the nature of the printing job at either meeting, or that he had seen the plates.

■ It is unnecessary to state the evidence further. We have omitted reference to additional corroborative evidence and also to various discrepancies in appellants' own evidence, both of which go far to support the verdict. We think there can be no serious question as to its sufficiency.

■ We find no merit in the defense of entrapment urged by Wojcik and Schultz. To establish this defense appellants would have to prove that the Government incited them to commit the offense. The evidence falls far short of such proof. True, Wojcik testified that the scheme originated with Teeters, and he compelled her by threats to go through with it, and Schultz was just a good friend who came into it to help her out of her trouble. Her evidence was not convincing. The issue of entrapment was presented to the jury with correct instructions, and we find no error in its failure to base its verdict thereon. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249; Wall v. United States, 5 Cir., 65 F.2d 993.

Appellant Kendall contends that the verdict was manifestly against the evidence. We do not agree. On the contrary, we find it overwhelmingly supported by it. We likewise find no merit in his assertion of prejudicial error in the refusal of the court to grant certain instructions.

■ Kendall also asserts error in the injection of improper matter on cross-examination. When he stated that he was a novelty salesman selling various novelties including punchboards, counsel asked, without objection, if he sold slot machines, and he answered no. When he mentioned that he met Schultz while he was selling hosiery, counsel asked if he sold nylon hose, which he denied, and, upon objection of his counsel and request that the jury be instructed to disregard it, the court gave the requested instruction. A question and answer as to whether Kendall had ever bought or sold sugar stamps was, at his request, stricken. We find no error as to any of these items. Another matter complained of was as to a previous conviction. On main examination, Kendall stated that he had been in trouble before, in 1933. On cross-examination counsel was permitted to question him about his trouble and to elicit the answer that he had served four years and three months on conviction of accessory before the fact for armed robbery. In view of the fact that the matter was opened up on main examination, there was on error in permitting counsel to cross-examine as to the nature of the trouble.

■■ Kendall further objects to the introduction of evidence that he was to receive 20% of the counterfeit stamps, prior to proof of the conspiracy to make those stamps, stating in his brief, "The conversation proved, if anything, that Kendall was allegedly participating in a conspiracy *but there was no proof of the conspiracy itself.*" (His italics.) We find no merit in this contention. The sequence of proof is a matter within the discretion of the trial judge, and in this case, the judge instructed the jury when the conversation was admitted that it was to be considered only against the defendant who had it. We can think of little better evidence of the existence of a conspiracy than the plan to distribute the proceeds of it. The alleged conspirator who admitted such plan of distribution is in no position to complain of its use as an element of proof of the conspiracy.

Judgment affirmed.