**BARTLETT et al. v. UNITED STATES.**
Nos. 3552, 3553.

Circuit Court of Appeals, Tenth Circuit.
March 3, 1948.
Rehearing Denied March 24, 1948.

See, also, 166 F.2d 928.

H. A. Kiker, of Santa Fe, N. M. (Chas. C. Spann, of Santa Fe, N. M., and Theodore S. Johnson, of Hobbs, N. M., on the brief), for appellants.

Everett M. Grantham, U. S. Atty., of Santa Fe, N. M. (Maurice Sanchez, Asst. U. S. Atty., of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Bartlett and Edwards were charged by an indictment containing five counts. The first count charged a conspiracy to violate 18 U.S.C.A. § 80. The remaining counts charged violations of 18 U.S.C.A. § 80, the material parts of which are set out in note 1.

Count two charged that, on or about August 23, 1945, Bartlett and Edwards "did knowingly and wilfully, by means of a certain scheme, falsify, conceal and cover up a material fact in a matter within the jurisdiction of the Office of Price Administration, an agency of the United States, in this:

"That * * * Bartlett and * * * Edwards, at the time and place aforesaid, did devise a certain scheme whereby * * * Bartlett prepared and presented to * * * Edwards, who was a Ration Bank Teller at the Lea County State Bank, at Hobbs, New Mexico, a false and fictitious ration deposit slip, calling for the deposit of 70,000 pounds of sugar credits to the account of Dr. Pepper Bottling Company, Hobbs, New Mexico, a trade name under which * * * Bartlett did business and which * * * deposit * * * was falsely and fictitiously represented as being supported by a like amount of sugar ration stamps, whereas in truth the * * * deposit was not supported by * * * any sugar ration stamps, and no sugar ration stamps were surrendered to the * * * Bank or to * * * Edwards."

Count three charged a like offense on December 6, 1945, with respect to another deposit. Count four charged a like offense on December 13, 1945, with respect to another deposit. Count five charged that Bartlett and Edwards, on December 13, 1945, made and used, and caused to be made and used, a false account, knowing the same to contain false and fictitious statements and entries in a matter within the jurisdiction of the Office of Price Administration.

The trial court held that the conspiracy was merged in the substantive offenses. Bartlett and Edwards were tried and convicted on counts two, three, four, and five. Bartlett was sentenced to imprisonment for a period of five years on each of counts two, three, four, and five, the sentences to run concurrently, and was fined $10,000 on each of counts two, three, and four. Edwards was sentenced to imprisonment for a term of one year on each of counts two, three, four, and five, the sentences to run concurrently.

Bartlett was the owner of a bottling plant at Hobbs, New Mexico, and held the franchise for the bottling and distribution of a beverage known as Dr. Pepper, and was an industrial user of sugar. During the year 1945, a ration banking plan, which had been set up by appropriate regulations of the Office of Price Administration, was in operation and sugar ration credits were handled by designated banks in much the

---

1 "* * * whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false * * * account, * * * knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

same manner as ordinary bank deposits. Under the plan, an industrial user of sugar would deposit his sugar evidence in a designated bank and would be given credit therefor and would draw sugar checks against his sugar credits in the bank.

The Lea County State Bank at Hobbs, New Mexico, hereinafter called the Bank, during the year 1945, was a sugar ration bank under the Office of Price Administration. Edwards was the ration bank teller and had direct charge of all rationing, and had custody of all rationing books and records. Bartlett carried a sugar ration banking account in the Bank. He had made application to the Office of Price Administration for an allotment of sugar for the year 1945, and had been allotted 25,475 pounds for that year. The allotment was sent to him in the form of quarterly sugar ration checks issued by the Office of Price Administration, such being the only method used by the Office of Price Administration to place sugar credits in the hands of an industrial user. Sugar stamps were not issued to an industrial user. Prior to August, 1945, Bartlett's largest single deposit of sugar ration evidence was 11,829 pounds. Between August 23, 1945, and December 13, 1945, Bartlett prepared and presented to the Bank 11 deposit slips calling for the deposit to his credit of 70,000, 140,000, 96,120, 95,000, 95,050, 156,000, 250,000, 59,870, 80,084, 2,108, and 3,000 pounds of sugar, respectively. The original and duplicate deposit slips were introduced in evidence. The first eight deposits listed, aggregating 962,040 pounds of sugar credits, were represented on the deposit slips as being supported by the surrender of a like amount of sugar stamps. Such eight deposits were received and the deposit slips initialed by Edwards. The three remaining deposits were represented on the deposit slips as being supported by the deposit of sugar ration checks and were received and the deposit slips initialed by other tellers in the Bank. With the deposit slips, Bartlett deposited envelopes purporting to contain the sugar stamps or sugar checks. Bartlett was given credit on the books of the Bank for such deposits by Edwards. He drew sugar checks against such credits which checks were honored by the Bank.

Edwards' employment with the Bank ceased on December 15, 1945. Jesse Combs succeeded Edwards as ration teller at the Bank.

Combs testified that he assisted Edwards in her work as ration teller in December, 1945, before the termination of her employment on the 15th of that month; that he had a conversation with Edwards about the 12th or 13th of December, 1945, respecting Bartlett and his sugar account; that Edwards asked him to do business with Bartlett as she had been doing it; that Edwards stated Bartlett would bring in sugar deposits, accompanied by envelopes supposed to contain sugar stamps but which would, in fact, contain money; that Bartlett's sugar account would be credited with such deposits, and that if Combs would continue that practice with Bartlett's sugar account, it would be worthwhile to Combs; that she had made several hundred dollars in one month; and that he declined to enter into such an arrangement; that in a conversation a day or two later, Edwards asked him if he had changed his mind and he answered in the negative.

Combs further testified that after Edwards left the employ of the Bank, Bartlett "asked me if I had changed my mind about Trudy Edwards' deal," and that Combs told him he "didn't want to do it"; that he had about four conversations with Bartlett in the Bank; that the second conversation was two or three weeks after the first; that Bartlett asked for a statement of his ration account which Combs gave him and then asked him "if I wanted to make some money, and transact business with him, and post these false deposits to these accounts"; that he told him his answer still was no; that the third conversation was about two or three weeks later when Bartlett came for his ration statement; that in the final conversation with Bartlett, Bartlett asked him if he had changed his mind and would he do what Edwards had been doing, and when he answered no, Bartlett asked him if he knew of any other bank that would make the same deal with him or if there was anybody in the Bank that would make the deal, and that Combs told him he did not know.

In January, 1946, Charles C. Hopkins, who was then Chief Investigator of the Sugar Section of the Office of Price Administration, investigated Bartlett's sugar transactions. On January 11, 1946, he and John L. Moffett, Regional Enforcement Attorney, interviewed Bartlett. Hopkins told Bartlett he wanted to check his sugar ration account and his sugar purchases. After some delay, Bartlett produced his ration bank account and canceled checks and deposit slips. Most of the deposit slips purported to be supported by stamps. Hopkins asked Bartlett where he obtained such stamps. Bartlett replied that in 1943, he bought a lot of syrup from a Mr. Dyer whom he believed lived in New York; that he purchased 14 cars of syrup, each containing from 100 to 125 barrels of syrup; that after he received the syrup, he noticed it was going to spoil and concluded he had better dispose of it; that he made arrangements to dispose of the syrup to various franchise dealers of the Dr. Pepper Company; that he received stamps for the syrup; that he did not get any particular amount of stamps, just whatever anyone could afford to give him; that he had an account of such transactions on an envelop but threw it away; that he did not care to name anyone because if he had done wrong, he did not want to involve "any of these people." Hopkins interviewed Bartlett again on January 14. At that time, he had a recapitulation of all the ration bank checks issued by Bartlett and asked Bartlett to identify each check and the recipient of the sugar thereunder. Bartlett identified each check and the bottling company that received the check. Hopkins then inquired how Bartlett could issue all of such checks and Bartlett replied that on four or five different occasions in 1945, a man who was a stranger to him had come to his place of business and sold him stamps; that each sale was by a different person; that he paid $2 to $15 for 100 pounds of sugar stamps and that he received the same amount when he issued the checks; that if he had paid $2 a hundred, he charged that, and if he had paid $15 a hundred, he charged that. Bartlett further stated that on four or five occasions, an unknown

person drove up to his place in a big automobile with Washington, D. C., license plates; that the back of the automobile was filled with rolls of stamps; that he purchased as many as he could dispose of; that the reason he made these deposits and put out these checks was that there was a shortage of sugar and he was in a position to buy these stamps and help other franchise dealers out.

Sugar stamps were never printed in rolls. They were printed on flat sheets which were bound in ration books. Each stamp covered five pounds of sugar.[2] After April 16, 1945, sugar stamps deposited were required to be attached to gummed sheets. Before that time, they could be deposited in envelopes about 4 x 2½ inches, with a box on the envelop to indicate the commodity and amount of credit.

Edwards made a report to the Denver Office of Price Administration covering the period from November 1, 1945, to December 4, 1945. The report showed sugar ration currency received for that period covering 269,888 pounds of sugar. During that period, she accepted deposits from Bartlett of 346,040 pounds of sugar credits. Since the Bank was the only depository for Lea County, it is a fair inference that other deposits were made and that Edwards gave Bartlett credit for sugar for which he deposited no stamps.

Where two or more persons have conspired to commit an offense against the United States, everything said, done, or written by each of them during the existence of the conspiracy and in furtherance thereof is admissible in evidence against the other. However, to render evidence of the acts or declarations of an alleged conspirator admissible against an alleged co-conspirator, the existence of the conspiracy must be shown and the connection of the latter therewith established by independent evidence. The existence of the conspiracy cannot be established against an alleged conspirator by evidence of the acts or declarations of his alleged co-conspirators, done or made in his absence. The acts or declarations of a conspirator, prior to the formation

---

[2] Stamps covering ten pounds of sugar were very rare.

of the conspiracy or after its termination, are not admissible against his co-conspirators.[3]

Where the indictment charges two or more persons with a substantive offense, and the evidence establishes a conspiracy between them to commit such offense, subject to the limitations above stated, the acts and declarations of one are admissible against the other, although no conspiracy is charged.[4]

The order of proof is a matter wholly within the discretion of the trial court.[5]

The existence of the conspiracy need not be established by direct evidence, but proof of circumstances from which the existence of the conspiracy fairly may be inferred is sufficient.[6]

While the declarations of one alleged co-conspirator are not admissible against another co-conspirator, unless the existence of the conspiracy is established by other evidence, the declarations of each co-conspirator are admissible as against him, and the whole evidence may be considered in determining whether a conspiracy has been established. In other words, when the independent evidence, together with the acts and declarations of one conspirator, establish the conspiracy, and the independent evidence, together with the acts and declarations of the other conspirator, establish the conspiracy, the declarations of each co-conspirator, made during the pendency of the conspiracy and in furtherance of its object, are admissible against both.[7]

Where the conspiracy contemplates a series of crimes, acts and declarations of a conspirator, made during the existence of the conspiracy, although after the commission of the specific crime for which the accused is on trial, are admissible, subject to the limitations above stated, where such acts and declarations are in furtherance of the general plan of the conspiracy.[8]

Bartlett's explanation to Hopkins as to how he acquired the extraordinarily large amount of sugar stamps was fantastic. A deposit of 250,000 pounds of sugar credits in sugar stamps would require 50,000 stamps. Edwards knew that Bartlett was not a sugar wholesaler or a retailer. She knew that stamps, after April 16, 1945, should have been attached to gummed sheets. Bartlett's credits alone, without the deposit made by others, far exceeded the amount of stamps Edwards reported as received. Prior to August, 1945, the largest single deposit made by Bartlett was 11,829 pounds of sugar ration evidence. There was no suggestion of any change in the character, size, or volume of his bottling business. From August 2 on, Bartlett received in rapid succession, credit for extraordinarily large deposits of sugar.[9] These facts, the legiti-

[3] Minner v. United States, 10 Cir., 57 F.2d 506, 511; Thomas v. United States, 10 Cir., 57 F.2d 1039, 1041.

[4] Lee Dip v. United States, 9 Cir., 92 F.2d 802, 803; Quercia v. United States, 1 Cir., 70 F.2d 997, 999; Lewis v. People, 109 Colo. 89, 123 P.2d 398, 401; People v. Pierce, 387 Ill. 608, 57 N.E.2d 345, 348; O'Neil v. State, 237 Wis. 391, 296 N.W. 96, 102, 135 A.L.R. 719; Commonwealth v. Spardute, 278 Pa. 37, 122 A. 161, 165.

[5] Braatelien v. United States, 8 Cir., 147 F.2d 888, 893; Hoeppel v. United States, 66 App.D.C. 71, 85 F.2d 237, 242; Rand v. United States, 8 Cir., 77 F.2d 52, 54; United States v. Kendall, 7 Cir., 165 F.2d 117, 119.

[6] Braatelien v. United States, 8 Cir., 147 F.2d 888, 893; Lee Dip v. United States, 9 Cir., 92 F.2d 802, 804; United States v. Von Clemm, 2 Cir., 136 F.2d 968, 970.

[7] Cummings v. United States, 9 Cir., 15 F.2d 168, 169; Commonwealth v. Riches, 219 Mass. 433, 107 N.E. 371, 373; United States v. Rosenberg, 2 Cir., 150 F.2d 788, 794; Licavoli v. State, Ohio App., 34 N.E.2d 450, 454, 455.

[8] Neal v. State, 104 Neb. 56, 175 N.W. 669, 670; People v. Williams, 30 Cal. App.2d 234, 85 P.2d 974, 976; People v. Halpin, 276 Ill. 363, 114 N.E. 932, 934, 935.

[9] 
| 8/23/1945 | 70,000 pounds |
|---|---|
| 9/4/1945 | 2,054 pounds |
| 9/13/1945 | 140,000 pounds |
| 11/5/1945 | 59,870 pounds |
| 11/15/1945 | 96,120 pounds |
| 11/26/1945 | 95,000 pounds |
| 12/3/1945 | 95,050 pounds |
| 12/6/1945 | 156,000 pounds |
| 12/13/1945 | 250,000 pounds |

mate inferences which might properly be drawn therefrom, and the declarations of Edwards to Combs, considered only against her, were sufficient to establish the conspiracy as against Edwards, and such facts and inferences and the declarations of Bartlett to Combs, considered only as against him, were sufficient to establish the conspiracy as against Bartlett.

■ The acts and declarations of a conspirator, made after the termination of the conspiracy, are not admissible against his co-conspirators.[10] But such declarations are admissible against the conspirator who makes them.[11]

■ Edwards left the Bank on December 15 and removed from New Mexico. The conspiracy between her and Bartlett terminated when she left the Bank. The declarations made by Bartlett to Combs occurred after the conspiracy had ended. They were, therefore, not admissible against Edwards, and the trial court erred in denying an instruction that Bartlett's declarations to Combs could not be considered against Edwards. But the declarations made by Edwards to Combs occurred during the existence of the conspiracy and were in furtherance of its general plan and were, under the principles of law hereinbefore stated, admissible against Bartlett.

Moreover, we are of the opinion that the statements made by Edwards to Combs were admissible against Bartlett for another reason. The rule of evidence, under which acts and declarations of one co-conspirator are admitted against his co-conspirator, is founded upon principles which apply to agencies and partnerships.[12] The first statement made by Bartlett to Combs warranted the jury in

finding that Edwards, in attempting to arrange with Combs to take her place in the conspiracy, was acting in behalf of Bartlett with authority so to do. If Edwards was acting as the agent of Bartlett when she made her statements to Combs, those statements would be admissible against Bartlett.

■ Hence, we conclude that the statements of Edwards were admissible as against Bartlett and that the court did not err in denying the requested instruction that the statements of Edwards should not be considered as against Bartlett.

■ Section 205(b) of Title 2 of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925(b), provides that "any person who makes any statement or entry false in any material respect in any document or report required to be kept or filed under section 2 or section 202" (§§ 902 or 922 of 50 Appendix, supra) shall, upon conviction, be subject to a fine of not more than $5,000, or to imprisonment of not more than one year, or both such fine and imprisonment. Counsel for Bartlett and Edwards contend that with respect to false entries made in violation of the Emergency Price Control Act, § 205(b), supra, repeals and supersedes 18 U.S.C.A. § 80. Repeals by implication are not favored.[13] "There are two, well-settled categories of repeals by implication: (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act." [14]

■ A statute will not be construed

---

[10] Minner v. United States, 10 Cir, 57 F.2d 506, 511; Hogg v. United States, 5 Cir., 53 F.2d 967, 969; Galatas v. United States, 8 Cir., 80 F.2d 15, 23; Oras v. United States, 9 Cir., 67 F.2d 463, 466.

[11] Galatas v. United States, 8 Cir., 80 F.2d 15, 23; Sabbatino v. United States, 2 Cir., 298 F. 409, 412; United States v. Alfano, 3 Cir., 152 F.2d 395, 397.

[12] Van Riper v. United States, 2 Cir., 13 F.2d 961, 967; Merrill v. United States, 5 Cir., 40 F.2d 315, 316; Strick-

land v. State, 122 Fla. 384, 165 So. 289, 290.

[13] Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L. Ed. 351; West India Oil Co. v. Domenech, 311 U.S. 20, 29, 61 S.Ct. 90, 85 L. Ed. 16; United States v. Jackson, 302 U.S. 628, 631, 58 S.Ct. 390, 82 L.Ed. 488; United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181.

[14] Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351.

as impliedly repealing a prior statute unless no other reasonable construction can be applied,[15] and, where two acts are upon the same subject, the rule is to give effect to both, if possible.[16] Section 205(b), supra, covers a false statement or entry. Section 80, supra, involves the element of the intent to cheat, swindle, or defraud the government of the United States, or any department thereof, and the element of a trick, scheme, or device, elements not embraced in the offense defined in § 205 (b), supra. Thus, it will be observed that § 80, supra, is both broader in scope and in degree of culpability than is § 205(b), supra. The two sections are not in irreconcilable conflict. Section 80, supra, covers cases where the elements of intent to defraud and fraudulent scheme are present. Section 205(b) covers cases of statements and entries false in any material respect willfully made. In Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467, the question arose whether § 80, supra, referred to as § 5438 of the Revised Statutes of the United States (codified from the Act of March 2, 1863, c. 67, 12 Stat. 696) was repealed by § 4746 of the Revised Statutes, 18 U.S.C.A. § 81, (codified from the Act of March 3, 1873, c. 234, 17 Stat. 575). The court held that § 5438, being wider in its scope, was not repealed by § 4746. Since the two sections are not in irreconcilable conflict, and since § 80, supra, is broader in scope and in degree of culpability than § 205(b), supra, we hold that the latter did not impliedly repeal the former, and that the charges in the indictment were properly laid upon § 80, supra.[17]

 The evidence of the amount of sugar allotted to Bartlett as an industrial user, the checks issued to him therefor,

and the deposit of such checks in the Bank were not, in our opinion, immaterial. The extraordinary amount of sugar credits which Bartlett obtained in excess of the amount of sugar ration evidence to which he was lawfully entitled was a circumstance tending to show the excess credit obtained was not supported by ration evidence.

 We deem it unnecessary to determine whether the instructions of the court properly presented to the jury the charge in count five, first, because counsel did not except to the instructions on that ground[18] and, second, because no fine was assessed on count five and the term of imprisonment on that count ran concurrently with the terms of imprisonment on counts two, three, and four, and the error, if any, was not prejudicial.[19]

 The court instructed the jury, in effect, that it could not find one defendant guilty and the other defendant not guilty. This instruction, in our opinion, was more favorable to Bartlett than was required. The offenses charged in counts two, three, and four were not of a character that could be committed only by two or more persons. Bartlett alone might have devised the scheme to falsify, conceal, and cover up a material fact, and induced Edwards to give credit for the deposits by the false representations on the deposit slips and envelopes purporting to contain the ration evidence, without guilty knowledge on the part of Edwards. Where several persons are jointly indicted and tried for an offense which might be committed by one person alone, one or more may be convicted and the others acquitted, for such an indictment, although joint in form, is regarded as a several charge against each defendant.[20] The evidence against Bartlett and

---

[15] United States v. Jackson, 302 U.S. 628, 631, 58 S.Ct. 390, 82 L.Ed. 488.

[16] United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181.

[17] See, also, United States v. Gilliland, 312 U.S. 86, 95, 61 S.Ct. 518, 85 L.Ed. 598.

[18] Rule No. 30, Fed.Rules of Criminal Procedure, 18 U.S.C.A. following section 687; Berenbeim v. United States, 10 Cir., 164 F.2d 679.

[19] Loney v. United States, 10 Cir., 151 F.2d 1, 5; Turk v. United States, 10 Cir., 38 F.2d 630, 631; Smith v. United States, 10 Cir., 38 F.2d 632, 633; Fisher v. Schilder, 10 Cir., 131 F.2d 522, 524.

[20] United States v. Le Fanti, D.C.N.J., 255 F. 210, 215; Chiaravalloti v. United States, 7 Cir., 60 F.2d 192, 193; State v. Jackett, 45 Idaho 720, 264 P. 875, 876; Hunter v. State, 63 Okl.Cr. 24, 72 P.2d 399, 402; 23 C.J.S., Criminal Law, §

Edwards was different in that the declarations made by Bartlett to Combs were admissible against Bartlett but not against Edwards, and in that there were many facts proven from which the jury might have inferred that Bartlett devised and perpetrated the scheme that did not apply to Edwards. Therefore, we conclude that a reversal as to Edwards does not require a reversal as to Bartlett.

The judgment is affirmed as to Bartlett and reversed as to Edwards with instructions to grant her a new trial.

1402; 42 C.J.S., Indictments and Informations, § 160.

Cf., Dunn v. United States, 284 U.S.

390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161.