**BRIGGS v. UNITED STATES.**

**PAYNE v. UNITED STATES.**

Nos. 3888 and 3889.

United States Court of Appeals
Tenth Circuit.

July 26, 1949.

Rehearing Denied Aug. 26, 1949.
Writ of Certiorari Denied Oct. 24, 1949.
See 70 S.Ct. 102.

318

R. M. Mountcastle and Kelly Brown, Muskogee, Okl., for appellant Briggs.

A. Camp Bonds and John W. Porter, Jr., Muskogee, Okl. (John W. Porter, Sr. and W. R. Banker, Muskogee, Okl., on the brief), for appellant Payne.

Cleon A. Summers, U. S. Atty., Muskogee, Okl., and Paul Gotcher, Asst. U. S. Atty., McAlester, Okl., for the United States.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Eddie J. Briggs, Sheriff of Muskogee County, Oklahoma, and Fred Payne, a Muskogee County liquor dealer, were convicted by a jury verdict, and sentenced by the District Court for the Eastern District of Oklahoma, on an indictment charging that they and other named persons (not convicted), conspired to violate the internal revenue laws of the United States, by carrying on the business of a wholesale liquor dealer without paying the special taxes required by 26 U.S.C.A. § 3253; purchasing and receiving distilled spirits in quantities greater than twenty gallons from persons other than authorized dealers of distilled spirits in violation of 26 U.S.C.A. § 2860; wilfully failing and refusing to keep records of such business in violation of 26 U.S.C.A. § 2857; and failing and refusing to keep conspicuously on the outside of the place of such business a sign stating that they were "wholesale liquor dealers" in violation of 26 U.S.C.A. § 2831. Twenty overt acts were pleaded in furtherance of the conspiracy.

Payne separately appeals from a conviction and sentence on the substantive offenses charged as objects of the conspiracy. On appeal, both attack the legal sufficiency of the indictment, but it is patterned upon the indictment approved by this Court in Young v. United States, 168 F.2d 242.

To establish the conspiracy, the government introduced evidence that in December 1946, after Briggs had been elected sheriff, and before he took office, he went to the

home of Dewey Stokes, a retail liquor dealer, and asked him if he wanted to wholesale liquor in Muskogee County. Upon being told that he wished to remain a retail dealer, Briggs told Stokes that he was going to have a wholesale liquor man, and inquired of the usual pay-off to the sheriff.

Prior to 1946, Fred Payne was a small retail liquor dealer in the City of Muskogee. In December of that year, and before the Sheriff took office the following January, he moved just outside the city limits, and established a large wholesale place about 200 feet from the side of the road. It is undisputed that during the period laid in the conspiracy, Payne purchased about 7624 cases of whisky, with a value of $319,110.00, and that he made frequent sales in wholesale lots. The evidence shows that he freely represented to retail dealers that if they bought their whisky from him at $5.00 per case in excess of the established price, he would pay their fines and replace their whisky if raided and charged. There was evidence from which the jury was entitled to infer that if a retail dealer purchased whisky from Payne, he was not molested by the county, but if he failed to do so, he was immediately raided.

On one occasion, when a retail dealer had been consistently raided, he went to the sheriff and inquired whether he wanted him to quit. When he said that he did, he asked the sheriff if there was anything he could do, and the sheriff told him to "look around". He contacted Greenwood, a former deputy sheriff, who told him that he could operate if he gave $5.00 per case to the sheriff, and that if he did operate, Greenwood would be the bookkeeper so that the sheriff would not be cheated. Another retail dealer testified that Payne told him that if he wanted to sell whisky, he would have to buy it from him at $14.50 a lug wholesale. When he told Payne that he could not make any money at that price, Payne said "You will make as much money as I do; I have to give the man a thousand dollars a month", and that so long as he bought whisky from Payne,

he was never raided by the sheriff or his deputies.

Dewey Stokes testified that soon after taking office, Briggs advised him that if he had any whisky on his place, he had better get it out, and that soon thereafter, Payne and a constable seized his whisky and delivered part of it to the county jail. He went to the jail and surrendered, and requested permission to examine and count his whisky which had been seized and delivered to the jail. While acting under the pretense of counting the whisky, he made a chalk mark on the bottles without letting anyone know. Later, he and two soldiers went to Payne's place and bought two bottles of Seagram's 7-Crown whisky, bearing the marks he had placed upon them in the jail.

While Payne was serving a thirty day jail sentence for violating the state prohibition laws under mandate of the Criminal Court of Appeals, he was often seen at his wholesale establishment. On one occasion, Briggs called Stokes, told him that he had Payne "behind the steel", and asked him to come down to the jail for a cup of coffee and see Payne in jail. When Stokes arrived, he was admitted to the jail, the sheriff had gone, and Payne was released and permitted to beat him up.

Another witness testified that in May 1947, Greenwood asked the witness to come to his home. Upon his arrival there, he found the sheriff, who asked him if he had been noticing editorials in the newspaper. When he said that he had, the sheriff replied, "that newspaper is putting the heat on us all * * * we are going to have to get rid of that newspaper man before we can make any money", and wanted to know if he could do it or import someone. Briggs asked the witness if John Louis Stone, the newspaper editor, ever came out to his place, and when informed that he did, asked if he ever drank anything. When the witness replied that he came out once in a while, the sheriff said, "will you give me a ring when he comes out. I want to arrest him and take care of him myself, and make it appear that he resisted arrest".

The existence of a conspiracy need not be established by direct evidence, but proof of circumstances from which the existence of a conspiracy may fairly be inferred is sufficient. Bartlett v. United States, 10 Cir., 166 F.2d 920. The evidence was amply sufficient to support the verdict of the jury that a conspiracy existed between the sheriff and Payne to engage in the wholesale liquor business, and it is undisputed that they failed to pay the tax, keep the records, or post the notices.

Briggs complains of the admission of numerous hearsay statements made to and by co-conspirators out of his presence, and to which he was not a party. It is of course a rule, scrupulously observed in the federal courts, that hearsay statements made outside the presence of an alleged conspirator before the conspiracy is established, are not admissible to incriminate him. Only hearsay statements made in furtherance of a conspiracy which has been established by competent evidence are admissible against an alleged conspirator. Bartlett v. United States, supra; Krulewitch v. United States, 336 U. S. 440, 69 S.Ct. 716. But the order of proof is a matter wholly within the discretion of the trial court. Bartlett v. United States, supra.

The trial court was careful to admonish the jury from time to time during the trial that testimony concerning conversations to which the sheriff, or any other defendant, was not a party, was inadmissible, and should not be considered until and unless the alleged conspiracy was established, and that he would advise them concerning the competency of the evidence against the various defendants. In his final instructions to the jury, the court specifically stated that numerous witnesses had testified to conversations had with some of the defendants, and that in each instance, such conversations were had with only one of the defendants. He pointedly called attention to the witnesses who related conversations with the defendants Payne, Briggs, Greenwood and Andrews, and then admonished them that the existence of a conspiracy could not be established against an alleged conspirator by evidence of acts or declarations of others in his absence. And he went on to explain how the statements made by one, or to one of the defendants was not admissible against others until and unless by competent evidence the conspiracy was established, and the particular conspirator was connected with it.

Quite apart from any statements made by any witnesses outside of the presence of either Briggs or Payne, evidence of his own statements, when coupled with the undisputed fact that Payne operated a very large wholesale establishment on the roadside, openly and notoriously, unmolested by any law enforcement officers, is entirely sufficient to establish a prima facie conspiracy between the sheriff and the liquor dealers. The jury was entitled to infer from these monumental facts that no one could so flagrantly violate the law without the knowledge, consent and protection of the law enforcement officers, of which the sheriff was the head. The statements of the co-conspirators were only confirmatory of an arrangement manifest to the eyes of all who would see.

We think the evidence was competent, and that the instructions of the court were in accordance with the recent pronouncements of this court in Bartlett v. United States, 166 F.2d 928. Indeed, the defendants took no exceptions to them, and they were not reversibly erroneous.

Payne, on behalf of himself, complains of the refusal of the court to sustain a motion to suppress the evidence obtained at the time of his arrest. The contention is that since the investigator was present when others purchased liquor in wholesale quantities, some time prior to the arrest, this in some way amounted to a search, or was in effect the inception of the search, which culminated when he was arrested. The record shows that the search and arrest were made on the authority of a search warrant duly issued by the United States Commissioner, upon the affidavit of a special investigator of the Alcohol Tax Unit. The sufficiency of this

affidavit or warrant is not questioned, and there is no merit to the contention.

■ Payne also complains of the introduction of bank records, obtained by the Alcohol Tax Unit, in pursuance of an investigation conducted by an agent on the question of his civil liability for taxes. He moved to suppress these exhibits on the grounds that not having been secured in pursuance of a valid search warrant, they were inadmissible as evidence against him. The exhibits were produced in pursuance of a summons issued under 26 U.S.C.A. §§ 3614(a) and 3615. Their production was clearly lawful. United States v. First National Bank of Mobile, D.C., 67 F.Supp. 616. If the bank had been subpoenaed duces tecum to produce the records, they would have been admissible, and since they were already available to the government, they were admissible here.

■ Payne also complains of the refusal of the court to declare a mistrial because of statements made by the United States Attorney on voir dire to the effect that Payne was a convicted bootlegger. It is said that these statements put Payne's character in issue and were therefore prejudicial. But the statements, when considered in their context, were not improper. They were not made for the purpose of putting his character in issue, but as a part of the facts which were later proven, to the effect that Payne was serving a thirty day sentence in the county jail under a mandate of the Criminal Court of Appeals when he assaulted witness Stokes, and also as a part of the proof that while he was serving this sentence, he was frequently seen at his wholesale establishment. Evidence directly bearing upon the guilt of the crime charged is not rendered inadmissible simply because of its possible effect upon the character of the defendant. See Smith v. United States, 9 Cir., 173 F. 2d 181.

■ Payne also complains of the rejection of proffered exhibits showing that certain other named individuals purchased liquor from wholesale liquor dealers in Louisiana and Illinois. The stated purpose of this evidence was to "offset any impression which the jury might have that said plaintiff was the only person engaged in the sale of large quantities of whisky in Muskogee County".

We think the court properly rejected the evidence for the reason that it would not tend to disprove that Payne was engaged in the wholesale liquor business or that Sheriff Briggs was in league with him.

From an examination of the whole record, we are convinced that the judgments should be affirmed.