**CALDERON v. UNITED STATES.**

**MONTANO v. UNITED STATES.**

Nos. 4408, 4409.

United States Court of Appeals
Tenth Circuit.

May 5, 1952.

W. S. Lindamood, Albuquerque, N. M. (A. T. Hannett and G. W. Hannett, Albuquerque, N. M., were with him on the brief), for appellants.

Edward E. Triviz, Asst. U. S. Atty., Albuquerque, N. M. (Maurice Sanchez, U. S. Atty., Albuquerque, N. M., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Ambrosio Calderon, Siegfried G. Montano, Fredrico Vigil and Isabel Vigil, were charged by indictment in the United States District Court of New Mexico, with conspiring to violate the internal revenue laws of the United States by carrying on the business of a wholesale and retail liquor dealer without paying the special taxes required by 26 U.S.C.A. § 3253. The defendant Isabel Vigil entered a plea of guilty to the charge, and upon motion of the Government, the charge was dismissed against the defendant Fredrico Vigil. This appeal is from a judgment and sentence imposed upon Calderon and Montano, after a jury verdict of guilty. The principal question presented is the sufficiency of the evidence to support the jury's verdict.

Appellants, Calderon and Montano, as partners, operated Sieg's Bar in Gallup, New Mexico. On trial, it was stipulated that they held a retail liquor dealer's tax stamp, but did not have a wholesale dealer's tax stamp; and, that Isabel Vigil did not have a liquor dealer's tax stamp of any kind. Appellants admit, as they must, that under the evidence, Isabel Vigil was, during the time material here, violating the internal revenue laws by selling whiskey and wine from her residence at 1103 West Maloney in Gallup, and that part if not all of the whiskey and wine sold was purchased from, and delivered to her residence by, the appellants. Appellants also admit that under the evidence appellant Calderon committed an offense by delivering Mrs. Vigil an amount of alcoholic beverages in excess of the amount permitted under their retail dealer's tax stamp. But, consistently with their defense in the trial court, they take the position on appeal, that the commission of the single offense does not prove either or both of them guilty of the conspiracy to commit such offense; and, that since they were otherwise lawfully engaged in the business of a retail liquor dealer they could not be guilty of a conspiracy to sell retail in the absence of proof that they conspired with Isabel Vigil to sell retail at her residence.

It is true that the gist of the conspiracy is to sell liquor wholesale and retail at Isabel Vigil's residence without a wholesale or retail liquor dealer's tax stamp, and it is also true as appellants earnestly contend, that there is no direct evidence of an understanding or agreement between appellants and Isabel Vigil to engage in such unlawful business at her residence. Indeed, such agreement was denied by each of the appellants, and Mrs. Vigil testified that she did not have any "agreement or understanding" with them—that she would "just call on the telephone and order, and they would deliver." But, we also know and recognize that criminal partners seldom put their agreements in writing or make them otherwise explicit. Thus, of necessity, the law of conspiracy contemplates that such unlawful agreements and understandings are usually implied from a course of conduct or relevant circumstances. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Heald v. United States, 10 Cir., 175 F.2d 878; Briggs v. United States, 10 Cir., 176 F.2d 317; Bartlett v. United States, 10 Cir., 166 F.2d 920; Cruz v. United States, 10 Cir., 106 F.2d 828; United States v. Manton, 2 Cir., 107 F.2d 834. If, therefore, the evidence developed a collocation of facts and circumstances from which the jury could infer beyond doubt, that there was a plan or scheme to sell whiskey and wine from the Vigil home without a tax stamp, and that the appellants knowingly participated therein, its verdict must be sustained.

To show appellants participation in and connection with Isabel Vigil's illicit business, Government investigators who developed the case against them, testified to the following facts: On February 10, 1951, they "drove down by the Vigil's home and parked out in the field west of their house." There were several cars and trucks parked around the house and Indians were "coming in and out." They would have a "bottle or package—some would drive out in the field

where the investigators could see them drinking out of the bottles." During the time the house was under observation, appellant Calderon drove into the yard and "carried two cartons into the house—they looked like wine cartons." He returned a second time that day, but was waived away by Mr. Vigil, who had "spotted" the investigators' car in the field.

On March 10, the Vigil home was again put under surveillance. During this time forty vehicles were seen driving into the yard, each containing from three to ten Indians. During the afternoon the investigators put the appellants' Bar under observation, and from 3 p. m. until 4:50 p. m. saw appellant Montano on five different occasions take "packages and cases from the bar * * * and deliver them to the Vigil residence."

On March 17, the investigators returned to the Vigil home. During this period of observation they saw appellant Calderon make four deliveries of "cases" and on one trip delivered a "case" directly to an Indian's pick-up truck. On the evening of that day, one of the investigators returned to the Vigil residence in company with four Navajo Indians. He secreted himself in the canvas-covered body of their truck and observed two of his companions enter the house and return with two pints of wine and one pint of whiskey. Thereafter, they re-entered the house and made arrangements to buy more wine with $30.00 given them by the investigator. Within a short time appellant Calderon drove into the yard and two cases, each containing three gallons of wine, were put into the truck. Calderon was then seen to enter the Vigil residence where Mrs. Vigil gave him "what appeared to be some bills."

▐ On these facts the jury was warranted in the inference that an arrangement or agreement did exist between the parties to engage in the wholesale and retail liquor business at the Vigil residence, with Isabel Vigil making the sales, and appellants supplying the merchandise.

▐ In charging the jury, the trial court stated in part: "I feel justified in calling your attention to the fact that the witness [Isabel Vigil] may not have fully understood the purport of her testimony that no arrangement existed, and you will not be bound by that testimony if you think it at variance with other evidence in the case." This "suggestion" is said to be "completely unjustified, highly prejudicial and misleading to the jury." It is argued that since the witness appeared to be intelligent and competent to testify without an interpreter, there is nothing to show or tending to show that she misunderstood the nature or purport of the questions propounded to her touching an agreement or arrangement between the parties.

When considered in its proper context, however, we think this part of the instructions was intended to tell the jury that the witness might not have fully understood the purport of her testimony to the effect that no arrangement existed, and that if from other evidence the jury was convinced that an implied arrangement did exist, it would be justified in finding the defendants guilty, even though this witness' testimony tended to negative any explicit arrangement or agreement. Such instruction was entirely consistent with the other instructions to the effect that criminal understandings or arrangements need not be direct or formal, but could be implied in the circumstances. The court was careful to explain that it was passing no opinion on the weight or sufficiency of the evidence, or the truth or veracity of any witness, and that such was the sole province of the jury. We do not think the challenged instruction unduly influenced the jury's consideration of the facts and circumstances under applicable law.

The judgments are affirmed.