**BARTLETT et al. v. UNITED STATES.**

Nos. 3550, 3551.

Circuit Court of Appeals, Tenth Circuit.

March 6, 1948.

H. A. Kiker, of Santa Fe, N. M. (Chas. C. Spann, of Santa Fe, N. M., and Theodore S. Johnson, of Hobbs, N. M., on the brief), for appellants.

Everett M. Grantham, U. S. Atty., of Santa Fe, N.M. (Maurice Sanchez, Asst.

1402; 42 C.J.S., Indictments and Informations, § 160.

Cf., Dunn v. United States, 284 U.S.

390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161.

U. S. Atty., of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Bartlett, Edwards, Walker-Smith Company,[1] and Kee were charged by indictment with a violation of 18 U.S.C.A. § 88. Five other individuals were also charged as co-defendants but the indictment was dismissed as to them and the Company.

The indictment charged that the defendants conspired to violate laws of the United States respecting the rationing of sugar and the control of sugar prices; that the conspiracy was to be carried out in substantially the following manner: That Bartlett, with the consent of the Company and Kee, its manager at Hobbs, New Mexico, would issue his check for 60,000 pounds of sugar credits, drawn on Bartlett's sugar ration account in the Lea County State Bank[2] at Hobbs, New Mexico, payable to the Company; that such check would be accepted by Kee and deposited to the sugar ration account of the Company in the Bank without the delivery at the time of such transaction of any sugar to Bartlett; that Bartlett, with the consent of the Company and Kee, would agree and arrange with Edwards, the ration bank teller at the Bank, to accept from Bartlett a fictitious deposit slip, not supported by valid sugar ration evidence, calling for the deposit of 200,000 pounds of sugar ration credits to the account of the Company in such Bank; that Edwards would place a fictitious credit of 200,000 pounds of sugar ration evidence to the account of the Company in the Bank; that E. L. Randolph, J. W. Beasley, J. L. Thomas, J. R. Tate, and J. W. Winslow would pay to Bartlett certain sums of money; that Bartlett would then communicate with the Company and Kee and instruct them to deliver to the person so paying such moneys to Bartlett, amounts of sugar, and to collect from such persons the ceiling price for such sugar on delivery; and that the Company would charge such deliveries of sugar to its sugar ration credits in the Bank created, as above stated, and that such transactions would all be carried out without the surrender of any valid sugar ration evidence when such sugar was sold and delivered.

It further alleged 13 overt acts performed in furtherance of such conspiracy.

The evidence introduced by the United States established these facts:

Bartlett was the owner of a bottling plant at Hobbs, New Mexico, was engaged in the bottling and distribution of a beverage, known as Doctor Pepper, and was an industrial user of sugar. He filed a registration as an industrial user of sugar for the year 1945 and was allotted 25,475 pounds of sugar, payable in quarterly allotment checks. Four checks were issued to Bartlett for such sugar allotment. An industrial user of sugar was not entitled to receive sugar ration evidence in any manner other than through quarterly allotment checks. During the year 1945, a ration banking plan, which had been set up by appropriate regulations of the Office of Price Administration, was in operation, and sugar ration credits were handled by designated banks in much the same manner as ordinary bank deposits. Under the plan, an industrial user of sugar would deposit his sugar ration evidence in a designated bank and would be given credit therefor and would draw sugar checks against his sugar credits in the bank. During the year 1945, the Bank was a designated depository of sugar ration evidence. Edwards was the ration bank teller for such Bank for approximately one year prior to December 16, 1945. Bartlett drew two checks payable to the Company, one dated September 4, 1945, for 20,000 pounds of sugar, and one dated December 6, 1945, for 60,000 pounds of sugar. The check for 20,000 pounds of sugar was endorsed by the Company and was paid September 18, 1945. The check for 60,000 pounds of sugar was endorsed by the Company, was paid December 11, 1945, and the ledger account of the Company shows a deposit to its credit on December 11, 1945, of 66,350 pounds of sugar evidence. Bartlett prepared a deposit slip, dated December 13, 1945, covering 200,000 pounds of sugar ration credits, purportedly supported by sugar

---

[1] Hereinafter called the Company.

[2] Hereinafter referred to as the Bank.

stamps, for deposit to the account of the Company. The slip was initialed by Edwards. On December 13, 1945, the ledger account of the Company in the Bank was credited with 200,000 pounds of sugar ration evidence.

On December 13, 1945, Bartlett gave Kee the duplicate deposit slip for 200,000 pounds of sugar ration evidence and told Kee that he had deposited that amount of credit to the Company on that date.

Combs, a witness for the United States, testified that he was employed by the Bank during 1945; that he became ration clerk on December 15, 1945; that about December 13, 1945, Edwards asked him if he wanted to make some money, and, upon inquiry as to how it could be done, Edwards stated that she had been transacting business with Bartlett by accepting deposits purporting to be supported by sugar stamps, but that there were no stamps; that she had made over $700 in one month; that Bartlett would enclose currency in the envelopes purporting to contain the sugar ration stamps and that she took the money from the envelopes; that no sugar ration evidence would, in fact, be deposited in support of such credits; that he told Edwards he did not want to get mixed up in any trouble; that about a day later, Edwards asked him if he had changed his mind about transacting business with Bartlett, and that he replied in the negative; that two or three weeks later, Bartlett approached him in the Bank and asked him if he had changed his mind about Edwards's proposition and if he would help Bartlett out; that he answered in the negative; that Bartlett approached him on three subsequent occasions; that they were about three weeks apart and took place when Bartlett came to the Bank for his ration statements; that on each occasion, Bartlett asked Combs if he had changed his mind and if he would transact business with Bartlett.

Moffett, an Enforcement Attorney for the Sugar Rationing Division of the Denver Office of Price Administration, and Charles Hopkins, Investigator for the Office of Price Administration, interviewed Bartlett with respect to his sugar account on January 11, 1947, at Hobbs, New Mexico. After some delay, in compliance with their request, Bartlett produced his ration bank statements, deposit slips, and canceled bank checks drawn on his sugar account. Upon being interrogated about the unusually large amount of stamps, Bartlett stated that in 1943, he imported 14 carloads of syrup, containing from 85 to 125 barrels per car, which was ration free at the time; that he discovered that the syrup was beginning to spoil, and that he shipped it to a number of friends who were Doctor Pepper bottlers. Bartlett declined to identify the persons to whom he shipped the syrup, but stated that the persons to whom he did ship the syrup sent him sugar stamps. He stated that he kept a record of the transactions on an envelop, but had destroyed the envelop.

The evidence introduced by the United States further established these facts:

Randolph was in the bakery business at Hobbs. On November 11, 1946, Randolph issued and delivered his check drawn on the Bank, payable to Bartlett, in the sum of $1,200. The check was endorsed by Bartlett. Bartlett told Randolph he would arrange with the Company for Randolph to receive sugar; that Randolph called the Company by telephone and inquired if they had sugar for him and received an affirmative reply; that he ordered and received the sugar as he needed it.

Beasley was in the cafe business in Hobbs. In December, 1946, Thomas told Beasley he could help him obtain sugar for use in his cafe. On December 12, 1946, Beasley issued his check for $205, payable to Thomas, drawn on the Bank. Thomas endorsed the check and delivered it to the Doctor Pepper Bottling Company. The Bottling Company endorsed the check and it was paid by the Bank. After Beasley gave the check, he called the Company and 1000 pounds of sugar were delivered to him, for which he paid the ceiling price.

Thomas paid Bartlett $102.50 and received 500 pounds of sugar from the Company, for which he paid the Company the ceiling price.

No sugar ration evidence was surrendered by Randolph, Beasley, or Thomas for the sugar delivered to them.

Kee entered a plea of nolo contendere. Bartlett and Edwards were convicted. Imposition of sentence on Bartlett was suspended and he was placed on probation for a period of five years to begin immediately upon his release from custody under a sentence imposed in an earlier case, hereinafter referred to. Imposition of sentence on Edwards was suspended and she was placed on probation for a period of two years. Bartlett and Edwards have appealed.

Before the trial in the instant case, Bartlett and Edwards were tried on another indictment containing five counts. The first count of that indictment charged a conspiracy to violate 18 U.S.C.A. § 80. The four remaining counts charged violations of 18 U.S.C.A. § 80. The trial court held that the conspiracy in that case was merged in the substantive offenses. See our opinion in Bartlett v. United States, 10 Cir., 166 F.2d 920. The indictment in that case charged a conspiracy by means of a certain scheme to falsify, conceal, and cover up a material fact within the jurisdiction of the Office of Price Administration, an agency of the United States, to be effected by false ration deposit slips calling for the deposit of sugar ration credits to the account of Bartlett in the Bank, and false representations that such deposits were supported by sugar ration stamps indicated by such deposit slips, but not, in fact, supported by the deposit of any sugar ration stamps, the acceptance of such deposit slips by Edwards and the crediting to the account of Bartlett in the Bank, the sugar credits called for by such deposit slips.

The conspiracy charged in the earlier case was a scheme to falsify, conceal, and cover up a material fact within the jurisdiction of the Office of Price Administration in violation of 18 U.S.C.A. § 80, by means of false deposit slips and false entries of credit in the sugar account of Bartlett in the Bank not supported by sugar ration evidence. It involved solely the sugar account of Bartlett. The conspiracy charged in the instant case was to violate the Federal laws respecting the rationing of sugar and the control of sugar prices, to be effected by the setting up, in the account of the Company in the Bank, sugar credits not supported by any valid sugar ration evidence, and the sale by the Company of sugar to third persons without the surrender by them or by the Company of any sugar ration evidence, and the payment by such third persons of the ceiling prices of the sugar to the Company, and additional sums of money to Bartlett for the procurement of such sugar.

■ A plea of double jeopardy is unavailing unless the offense to which it is interposed is precisely the same in law and in fact as a former one relied upon under the plea.[3]

■ The test for determining whether the offenses charged in two indictments are identical is whether the facts alleged in one, if offered in support of the other, would sustain a conviction. Where one indictment requires proof of a fact which the other indictment does not, the several offenses charged are not identical.[4]

■ Where two indictments charge conspiracies, the test for determining whether the two conspiracies are one or are separate and distinct criminal agreements is whether evidence which would support the criminal agreement charged in one indictment would also establish the criminal agreement in the other indictment.

Obviously, the charge in the instant case required proof of facts wholly unnecessary to establish the charge in the former case. Only Bartlett and Edwards were interested in the criminal agreement charged in the former case and no actor, other than them, was necessary to the accomplishment of its object. It involved the sugar account of Bartlett in the Bank, and no other. The conspiracy charged in the instant case involved the sugar account of the Company in the Bank. Kee and the persons who ob-

3 Curtis v. United States, 10 Cir., 67 F. 2d 943, 947; Burton v. United States, 202 U.S. 344, 380, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362.

4 Robinson v. United States, 10 Cir., 143 F.2d 276, 277; Curtis v. United States, 10 Cir., 67 F.2d 943, 947; Rosenhoover v. Hudspeth, 10 Cir., 112 F.2d 667, 668.

tained the sugar were necessary actors to the accomplishment of its object and purpose. They had no interest in the conspiracy in the former case or with the accomplishment of its purpose. While Bartlett was the master figure in both conspiracies, and Edwards played a less important role in both, we think the facts fully warranted the conclusion that they were separate and distinct conspiracies. Conceivably, Bartlett, Edwards, and Kee might have entered into a single criminal agreement to effectuate the false sugar ration credits in both accounts, and to carry out the objects of the conspiracy charged in the instant case. But there is nothing in the evidence or the inferences which may be drawn therefrom to warrant such a conclusion. On the contrary, we think the evidence fully warranted the conclusion that separate agreements were entered into between Bartlett and Edwards and between Bartlett, Edwards, and Kee.

We conclude, therefore, that the conspiracies were separate and distinct and that Bartlett and Edwards were not twice put in jeopardy for the same offense.[5]

In commenting on the testimony of the witness Combs, the trial court, after calling attention to the fact that there was evidence that the testimony of Combs in the instant case and in the earlier case was, in certain respects, contradictory, then stated that he could find no motive why Combs should testify falsely and that the jury,. experienced in human affairs, knew that men do not remember past transactions with exactness and that inconsistencies in bits of testimony may indicate truthfulness rather than falsehood. But the trial court carefully safeguarded his comments by proper precautionary instructions and left the jurors free to exercise their independent judgment upon the facts. In Minner v. United States, 10 Cir., 57 F.2d 506, 513, this court, after recognizing the right and, in many cases, the duty of the trial court in his charge to sum up the facts and express his opinion thereon, laid down certain limitations which should govern the trial judge in the exercise of that function. It is our opinion that the trial court, in his charge in the instant case, comported within the limitations there laid down and that his comments, safeguarded as they were by proper precautionary instructions, were not erroneous.

The contention that an excessive sentence was imposed on Bartlett is not well taken. No sentence was, in fact, imposed. Imposition of sentence was suspended. The term of probation is not the term of sentence. See 18 U.S.C.A. §§ 724, 725.

Affirmed.

[5] See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239.