UNITED STATES of America,
Plaintiff-Appellee,

v.

Ramon D. MARTINEZ, and Gumaro Luis Tamez, Defendants-Appellants.

No. 77–1616.

United States Court of Appeals,
Tenth Circuit.

Sept. 23, 1977.

**634**

John E. Green, Acting U. S. Atty., W. D. Okl., Oklahoma City, Okl., Charles Lee Waters and William S. Price, Asst. U. S. Attys., Oklahoma City, Okl., for plaintiff-appellee.

L. Aron Pena of Pena, McDonald, Prestia & Zipp, Edinburg, Tex., for defendants-appellants.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appellant-defendants appeal an order denying their motion to dismiss Count I of a criminal indictment against Ramon D. Martinez (Martinez) and Gumara Luis Tamez (Tamez) on the ground that such prosecution is prohibited by the Double Jeopardy Clause of the Fifth Amendment.[1] The relevant facts are as follows:

On March 25, 1974, in the United States District Court for the Southern District of Texas, Brownsville Division, an indictment was returned charging that on or about December 11, 1973 in the Brownsville Division of the Southern District of Texas, Martinez, Tamez, Alonzo Alejandro Asoca and Juan Guerra-Sobrevilla, together and with other persons unknown to the grand jurors, conspired to unlawfully possess with intent to distribute a quantity of marijuana, a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1).[2] Count I alleged two overt acts to effectuate the conspiracy—(1) that on December 11, 1973, Martinez drove to a border patrol checkpoint near La Gloria, Texas, and (2) that Martinez was followed to the checkpoint by a car bearing the three other alleged co-conspirators. Count II of the same Texas

---

1. The district court's order denying defendants' motion to dismiss Count I of the indictment on double jeopardy grounds was a "final decision" within the meaning of 28 U.S.C. § 1291, and thus was immediately appealable to this court.

*Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

2. Counts I and II of this Texas indictment are reproduced in Appendix A hereto.

indictment alleged the substantive offense by Martinez and Tamez and the same two co-defendants of possessing with intent to distribute approximately 335 pounds of marijuana, contrary to 21 U.S.C. § 841(a)(1).

In the Texas case, a directed verdict of acquittal on the conspiracy charge was entered in favor of both Martinez and Tamez, after suppression of some crucial evidence.

On July 5, 1977, in the United States District Court for the Western District of Oklahoma, the indictment involved in this appeal was returned.[3] Count I of this Oklahoma indictment charged that some 20 named defendants, including Martinez and Tamez, and nine additional named but unindicted co-conspirators, including Mark Spencer, conspired together and "with other persons unknown to the Grand Jury" from "on or about November, 1973, and continuously thereafter, until on or about January, 1977" in the Western District of Oklahoma, and in Texas, West Virginia, Tennessee, Arkansas, Ohio and elsewhere to distribute marijuana, a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In Count I of the same Oklahoma indictment 41 overt acts are alleged. In 16 of the overt acts Martinez is named and in two of these Tamez is also named.

Defendants Asoca and Sobrevilla, who were named as defendants in the Texas indictment, are not among the alleged conspirators specifically named in the Oklahoma indictment.

It is Count I of the Oklahoma indictment which was unsuccessfully attacked by the double jeopardy plea of Martinez and Tamez. After that adverse ruling, these defendants commenced this appeal.

I

In support of their double jeopardy plea Martinez and Tamez essentially argue that the conspiracy charged in the Texas indictment is but a slice of the larger conspiracy alleged in the Oklahoma indictment. They say that the agreement charged as the basis of the indictment in this Oklahoma case

was entered into prior to December 11, 1973, and the mere fact that the agreement continued over a period of time and involved persons other than those specifically named in the indictment in Texas does not make these separate conspiracies. They emphasize the fact that December 11, 1973, the approximate date of the alleged conspiracy charged in the Texas indictment, falls within the time period covered by the indictment in this Oklahoma case, which covers the period from about November, 1973, until January, 1977.

The district court held an evidentiary hearing on the motion raising the double jeopardy issue. Martinez and Tamez called only two witnesses, Mark Spencer and his wife, Anita Spencer. Their testimony established that during the latter part of 1973, Mark Spencer and his wife were living in San Antonio, Texas, where Mark was serving in the Army (R. IV. 14). Through his military service Mark was acquainted with one Castillio who was the brother-in-law of Ramon Martinez (Id. at 24). Mark testified that he received 40 pounds of marijuana from Castillio (Id. at 25). Anita Spencer testified that she was not present when her husband "made the deal" on this marijuana, but Mark told her that he was getting it from Martinez. (Id. at 47–48).

This marijuana was taken to Oklahoma City by Mark and Anita Spencer and given to one Bill Katsakis (Id. at 25, 45). (William Katsakis is an alleged co-conspirator in the instant case). Upon the Spencers' return to San Antonio, Martinez and two other persons whom Mark was unable to identify came by the Spencers' apartment (Id. at 25). This was the first time Mark had seen Martinez, but he had talked to him on the phone. (Id. at 26). Martinez identified himself at the apartment and Mark paid Martinez "[t]hree-thousand-something" because he had understood from their phone conversation that it was his marijuana (Id. at 34). This payment which occurred around December 1, 1973 was Mark's first dealing with Martinez. (Id. at 25–26).

---

3. Pertinent parts of this Oklahoma indictment are set out in Appendix B hereto.

In the call from Martinez before this payment, Martinez had said he was Castillio's relative and that he had lots of marijuana and that if Mark wanted to buy in the future Martinez would deliver it for certain prices. (Id. at 26–27). Mark probably told Martinez that he might be interested. (Id. at 32). Mark testified that he and Martinez had discussed future transactions in a phone conversation about December 1; however, he said that from about December 1 to December 11 he was not under the impression that Martinez had agreed to deliver other marijuana. It was not until around the first of the year that Martinez and Mark got into such deliveries. (Id. at 37–38).

An opinion of the trial court in the Texas case was introduced as an exhibit by Martinez and Tamez at the double jeopardy hearing in the Oklahoma case. That opinion makes the following findings (R. II. 52–57):

On December 11, 1973, a 1973 Ford pickup approached the Border Patrol checkpoint located six miles northwest of La Gloria, Texas. The checkpoint was manned by agents Wheeler and Smith of the Border Patrol who were under orders to stop all northbound vehicles in order to detect the presence of any illegal aliens. The driver of the truck identified himself as Ramon D. Martinez and stated that he was an American citizen living in Donna, Texas. While inspecting the vehicle, the agents noticed a large tool box in the back of the truck. The driver willingly complied with the request to open the tool box and inside were found several large burlap sacks and several wrapped packages which altogether contained approximately 335 pounds of marijuana.

The Texas opinion further found that about five minutes after the Ford pickup was stopped, a 1959 Cadillac approached the checkpoint. It also was stopped and the driver identified himself as Luis Gamez Tamez, a resident alien living in Donna, Texas, the same town where Martinez resided. The car was also occupied by two other persons, both of whom lived in Weslaco, Texas. The occupants of the Cadillac said they were going hunting. The agents testified that this seemed rather curious to them as no hunting clothes or deer rifles were visible in the passenger compartment, and the trunk was found to contain only one shotgun. Suspecting that the occupants of the Cadillac were somehow connected with the marijuana found in the pickup, the agents requested that the driver pull the Cadillac off the highway for further investigation. About 45 minutes later, Agent Alfredo Villarreal and Agent James Kuykendall of the Drug Enforcement Administration arrived to continue the investigation.

The opinion further finds that Martinez initially denied any acquaintance with the occupants of the Cadillac, who likewise denied ever having seen Martinez. On further questioning, however, Martinez and Tamez acknowledged that they knew each other and had seen each other in the Donna area. Agent Kuykendall then went to the Cadillac to search it and under the right front floor mat he found a wallet belonging to Martinez.

From the Texas opinion, it appears that the wallet discovered in the Cadillac was relied on by the government as the essential evidentiary link between the occupants of the Cadillac and the driver of the pickup to establish the alleged conspiracy to possess, with intent to distribute, the marijuana found in the pickup. The decision of the trial judge in the Texas case to suppress the wallet as to both Tamez and Martinez mandated an acquittal of both as to the conspiracy count of the indictment (R. II. 56–57). The suppression of the wallet also removed any evidentiary link between Tamez and the marijuana he was alleged to possess in the substantive count. He was therefore acquitted on this charge as well. (Id. at 57). Defendant Martinez was convicted on the substantive count of possession with intent to distribute; however, this conviction was later reversed. *United States v. Martinez,* 5th Cir., No. 74–366 (August 8, 1975) (unpublished).

In the instant case, the trial court's memorandum opinion denied the plea of double jeopardy. The court rejected the contention that the Texas indictment is but a slice of the larger conspiracy alleged in the Oklahoma indictment. The court said that the Texas indictment, upon which the appellants have been tried and acquitted, involved only an agreement to possess with intent to distribute one quantity of marijuana, at the one location. (R. I. 53). Hence the court held that the defendants failed to sustain their burden of proof and failed to establish that the agreement alleged in the Texas indictment is the same agreement upon which the government is prosecuting in this case. The court therefore held that the Double Jeopardy Clause does not mandate a dismissal as to these two defendants.

Defendants Martinez and Tamez strenuously challenge these findings and conclusions. We turn to their appellate contentions.

## II

Defendants argue that the Texas indictment for conspiracy is broader than the events of December 11, 1973, the day the truck was stopped and searched by the Border Patrol, and that the Texas indictment covers the alleged January, 1974, dealings between Mark Spencer and Martinez, listed as one of the 41 overt acts in support of Count I of the Oklahoma indictment. Defendants' rationale is that all these dealings were part of a continuing agreement and conspiracy to distribute one controlled substance, marijuana. Thus they claim that the trial court was in error in finding that there were two conspiracies. They cite *Robbins v. United States,* 476 F.2d 26, 32 (10th Cir.), as stating the proper test for application of the Double Jeopardy Clause:

The well-settled rule is, that for the double jeopardy provision to apply, the offense charged and tried in the first count and the offense charged in the second count must be identical in law and fact. The test for determining whether the offenses charged are identical is whether the facts alleged in one, if offered in support of the other, would sustain a conviction. Where one count requires proof of a fact which the other count does not, the separate offenses charged are not identical, even though the charges arise out of the same acts.

Under this test, we feel the trial court's findings and conclusions are amply supported and that the defendants have not established that the two conspiracies are identical in law and fact. The testimony of the Spencers did not establish any connection between the dealings of Mark Spencer and the other co-conspirators named in the Oklahoma indictment, and the December 11, 1973 transaction involved in the Texas case and the conspiracy inferable from it. There was testimony on the one transaction in Texas between Martinez and Spencer about December 1, but nothing concerning the La Gloria, Texas incident on December 11. And Spencer's testimony that he talked with Martinez about December 1, 1973 included no proof of any understanding or agreement on future dealings at that time and they did not get into such transactions until around the first of the year. (R. IV. 37–38).[4]

The defendants also stress the overt acts alleged in the Oklahoma indictment and the testimony of Spencer concerning those events, arguing that they would have been admissible in the Texas trial and would have sustained their convictions there. We feel that the testimony and the overt acts

---

**4.** Defendants attempt to establish that the December, 1973 contacts between Spencer and Martinez and subsequent events up to March 25, 1974 (the date of return of the Texas indictment) are within the breadth of the Texas indictment by pointing to the general rule stated in *Ledbetter v. United States,* 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed. 1162 and similar cases that ordinarily proof of the acts charged on any date within the statute of limitations and before the return of the indictment is sufficient. *United States v. Allen,* 554 F.2d 398, 408 (10th Cir.), cert. pending. We feel that the rule on the permissible time period for the evidence is not dispositive. It still must be established that the conspiracy inferable from the proof is the same conspiracy in both cases for double jeopardy to be demonstrated.

and substantive counts alleged in the Oklahoma indictment do not establish a connection with the conspiracy charged on or about December 11, 1973 in the Southern District of Texas.

Defendants also rely heavily on the test stated in *Bartlett v. United States,* 166 F.2d 928, 931 (10th Cir.):

> The test for determining whether the offenses charged in two indictments are identical is whether the facts alleged in one, if offered in support of the other, would sustain a conviction. Where one indictment requires proof of a fact which the other indictment does not, the several offenses charged are not identical.
>
> Where two indictments charge conspiracies, the test for determining whether the two conspiracies are one or are separate and distinct criminal agreements is whether evidence which would support the criminal agreement charged in one indictment would also establish the criminal agreement in the other indictment.

We feel the *Bartlett* case does not sustain defendants' position. In *Bartlett,* the defendant was the master figure in both conspiracies and a defendant Edwards was a lesser figure in both, but the court concluded that separate agreements were involved, and that while one conspiracy might have been entered into for the transactions in both, this was not proven. Id. at 932. We likewise believe that the defendants here have not shown that there was one overall conspiracy. Where various parties conspire with one common conspirator, the evidence may nevertheless show that separate conspiracies were involved and that no one combination embraced the objectives of the others. *United States v. Butler,* 494 F.2d 1246, 1255 (10th Cir.); *United States v. Wilshire Oil Co. of Texas,* 427 F.2d 969, 976–77 (10th Cir.), cert. denied 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59; *United States v. Varelli,* 407 F.2d 735, 742 (7th Cir.), see also *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

The trial court found that the defendants had "failed to establish that the agreement alleged in the Texas Indictment is the same agreement upon which the government is prosecuting in this case." We are satisfied that this finding is supported by the record and not clearly erroneous. *Villano v. United States,* 310 F.2d 680, 684 (10th Cir.). It is undisputed that the burden of establishing the double jeopardy defense was on the defendants. *United States v. Wilshire Oil Co. of Texas,* 427 F.2d at 976 n. 12. The defendants' proof about the conspiracies was not sufficient to establish a "connecting link between the two." (Id. at 977). The mere fact that the same parties are charged with being members of two conspiracies, and that both conspiracies concerned transactions in the same items and overlapped in time, does not establish that the two conspiracies are the same. *United States v. Barzie,* 433 F.2d 984 (2d Cir.), cert. denied, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324.

We have considered the remaining arguments of defendants but find them to be without merit and feel that no further discussion is required.

### Conclusion

The Government filed a motion for summary affirmance in accordance with Rule 8 of this Court. We ordered a response by the appellant-defendants. Defendants have responded and have filed a thorough brief fully arguing their appeal. We have expedited the appeal as suggested in *Abney v. United States,* supra, 431 U.S. 651, 664 n. 9, 97 S.Ct. 2034.[5]

On consideration of the Government's motion, the defendants' response and brief, the record and the trial court's memorandum opinion we are convinced that the order denying the double jeopardy plea should be affirmed. Our conclusion is based on the issues appealed and the state of the present record brought up. We are satisfied that

---

**5.** Defendants' notice of appeal advised that they will request that this court hear the appeal en banc as a matter of first impression. The request is being denied by a separate order of the court.

this record amply supports the district court's finding that the double jeopardy plea was not established. However, our judgment and mandate should not be construed to preclude the district court from reconsidering the double jeopardy plea if at trial the court should be persuaded that the full trial record demonstrates that the plea is good.

AFFIRMED. The mandate shall issue forthwith.

## APPENDIX A

Counts I and II of the indictment in the United States District Court for the Southern District of Texas, Brownsville Division, read as follows:

### COUNT I

That on or about December 11, 1973, within the Brownsville Division of the Southern District of Texas, RAMON DIONICIO MARTINEZ, LUIS GUMARO TAMEZ, JR., ALONZO ALEJANDRO ASOCA, and JUAN GUERRA–SOBREVILLA knowingly and intentionally did combine, conspire, confederate, and agree together and with each other and with other persons unknown to the Grand Jurors to unlawfully possess, with intent to distribute a quantity of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Sections 846 and 841(a)(1), Title 21, United States Code.

Pursuant to and for the purpose of carrying out said unlawful combination, conspiracy, and agreement and to effectuate the objects thereof, the following and other overt acts were committed within the Brownsville Division of the Southern District of Texas:

### OVERT ACTS

1. On December 11, 1973, at approximately 5 PM, RAMON DIONICIO MARTINEZ did drive on FM 1017 to a Border Patrol checkpoint approximately six miles northwest of La Gloria, Texas.

2. RAMON DIONICIO MARTINEZ was followed to said Border Patrol checkpoint by a 1969 Cadillac, bearing LUIS GUMARO TAMEZ, JR., JUAN GUERRA–SOBREVILLA, and ALONZO ALEJANDRO AZOCA, who arrived at the checkpoint within minutes of the arrival of RAMON DIONICIO MARTINEZ.

### COUNT 2

That on or about December 11, 1973, within the Brownsville Division of the Southern District of Texas, and within the jurisdiction of this Court, RAMON DIONICIO MARTINEZ, LUIS GUMARO TAMEZ, JR., ALONZO ALEJANDRO AZOCA, and JUAN GUERRA–SOBREVILLA did knowingly and intentionally possess, with intent to distribute, approximately three hundred thirty-five (335) pounds of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, contrary to Section 841(a)(1), Title 21, United States Code.

## APPENDIX B

Count I of the indictment returned July 5, 1977, in the Western District of Oklahoma reads in part as follows:

### COUNT I

From on or about November, 1973, and continuously thereafter, until on or about January, 1977, in the Western District of Oklahoma, the States of Texas, West Virginia, Tennessee, Arkansas, Ohio, and elsewhere,

------------CHARLES ROBERT MATHES aka Churn, RAMON D. MARTINEZ, CARLOS ARRENDONDO aka "The Beast", ARTURO ARRENDONDO, GUMARO LUIS TAMEZ, CLYDE MATHES, WILLIAM ARPOLKA, GARY BURCH, WILLIAM KATSAKIS, LARRY JUSTUS, LARRY W. DANIELS, TONY BOB LEBOW, THOMAS MAHOON aka "KEEFER", BILL MITCHELL, JERRY EUGENE HOLT, LINDSEY STEADMAN, JERRY ROBERTS, STANLEY DON WEATHERLY, SHANE R. RHINEHART, and CHARLES ROBERT GESSELL_____

the defendants herein, along with Donald R. Vincent (deceased), Ernest Beckerdite (deceased), Lee McDonald (deceased), Di-

ane Beckerdite, Dennis Wade, Mark Spencer, George Price, Eugene Cook, Patricia Tanner, unindicted co-conspirators, wilfully and knowingly did combine, conspire, confederate and agree together, with each other and with other persons unknown to the Grand Jury, to violate Title 21, United States Code, Section 841(a)(1), in that they combined, conspired, confederated and agreed to distribute a Schedule I controlled substance, to-wit: marihuana, in violation of Title 21, United States Code, Section 846.