James **WILKETT**, Thomas H. Conklin, Jr., and Joe F. Hoover, Defendants-Appellants,

v.

**UNITED STATES of America,** Plaintiff-Appellee.

Nos. 81–1294, 81–1295 and 81–1296.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 12, 1981.

Decided June 24, 1981.

Rehearing Denied in Nos. 81–1295, 81–1296 July 21, 1981.

Gene Stipe, Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, Okl. (Mitchell A. Lee, Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, Okl., with him on the brief), for defendant-appellant Wilkett.

William J. Skepnek, Linn, Helms, Kirk & Burkett, Oklahoma City, Okl. (William R. Burkett, Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., with him on the brief), for defendant-appellant Conklin.

Carl D. Hughes, Hughes, Nelson & Blessington, Oklahoma City, Okl., for defendant-appellant Hoover.

James F. Robinson, Sp. Asst. U. S. Atty., Muskogee, Okl. (James E. Edmondson, U. S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Before McWILLIAMS and DOYLE, Circuit Judges, and KERR*, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

We here consider three consolidated appeals, all of which involve the former jeopardy provision of the Fifth Amendment to the Constitution of the United States. The issue as to defendants-appellants Conklin and Hoover are similar, if not the same. The problems in the case of Wilkett are different from those present in the Conklin and Hoover cause. Therefore, the latter two defendants will be first considered and we will take up Wilkett thereafter.

* Honorable Ewing T. Kerr, U. S. District Judge, Cheyenne, Wyoming, sitting by designation.

## Part I

### United States v. Conklin and Hoover

The ultimate issue to be determined is whether the defendants are entitled to a ruling that further prosecution in the Eastern District of Oklahoma is precluded because of alleged former jeopardy which they contend arose from a prosecution in the Western District of Oklahoma.

Conklin, Hoover, Wilkett and the others, were charged with conspiring in the Western District to distribute a controlled substance in violation of 21 U.S.C. § 846. Wilkett was convicted by a jury; Conklin and Hoover were not convicted because after the completion of the government's case they moved for dismissal of the indictment which the court granted on grounds of lack of venue resulting from a failure to prove Conklin's and Hoover's involvement in the Western District activities.

The court in the Western District trial determined that there were distinct conspiracies in the Eastern and Western Districts and that there was sufficient evidence to support belief that Conklin and Hoover were involved in a separate but related conspiracy which took place in the Eastern District. Whether the judge in the Western District could have solved the problem by use of some other approach need not be considered. We need only review those matters which have been presented. We do notice the division of the conspiracy into two conspiracies—one applicable to the Western District and the other applicable to the Eastern District. The effect of this is that the government is now precluded from using the overt acts which occurred in the west.

Very soon after this dismissal, Conklin and Hoover were indicted in the Eastern District, where they were charged with the new conspiracy. Wilkett was also named in this conspiracy, notwithstanding that he had been convicted in the Western District. All three defendants interposed former jeopardy contentions. Wilkett claimed that the attempted Eastern District prosecution of him was barred by his conviction in the Western District. Conklin and Hoover have claimed that the termination of their prosecution constituted an effective bar to the Eastern District effort, but the termination of their case was predicated on lack of venue. On the other hand, Wilkett contends that there was a final judgment on the merits in his case; that he has been adjudged guilty of a conspiracy which is indistinguishable from the new prosecution in the Eastern District.

### Discussion of Issues

Conklin and Hoover's main contention is that a further trial (in the Eastern District of Oklahoma) is barred because they have been placed in jeopardy as a result of the proceedings in the first trial. They point to:

a. That the indictment in the present trial is virtually the same as that in the first trial.

b. That the dismissal in the first trial, the granting of a motion, amounted to a judgment of acquittal and that this should be recognized as a foundation for a conclusion that there was double jeopardy.

c. That defendants took the initiative in seeking a dismissal because of prosecutorial over-reaching.

In the Western District case the court granted the motion to dismiss Conklin and Hoover and did so based on lack of venue, which resulted from the fact that their activities were restricted to the Eastern District.

The indictment in the Western District against Conklin and Hoover and the others had alleged a conspiracy to distribute a controlled substance. Conklin is a doctor of osteopathy and Hoover is a pharmacist. They were alleged to have been involved in writing and filling prescriptions for Dilaudid for the third defendant Wilkett. The assumption was that Wilkett was going to use the drug illegally to dope racehorses in the Eastern District. Wilkett did use the drug, but he distributed the drug throughout Oklahoma City in the Western District for human consumption.

The overt acts of Conklin and Hoover in writing and filling prescriptions occurred in the Eastern District. The government's original theory was that this activity of Conklin and Hoover was part of one large conspiracy; that some of the acts took place in the Western District and others occurred in the Eastern District.

Conklin and Hoover, from the start, advanced the proposition that the indictment in the Western District was improper on its face, in that it did not adequately plead that the crimes occurred in the Western District. When the judge was presented with this argument, he denied the motion and decided that the indictment's allegation that the conspiracy took place in the Western District, the Eastern District and elsewhere was sufficient. The judge stated that if at the end of the government's case there was a failure to prove formation of the conspiracy or the occurrence of an overt act in the Western District, the defendants could renew their motion.

The government succeeded in showing overt acts in the Western District, but was unable to prove that Conklin and Hoover were parties to the acts there. At the end of all the evidence therefor the motion for dismissal of the indictment was reargued and the trial court's order followed.[1]

The motion for severance and dismissal of the defendants Hoover and Conklin was thus granted and the indictment against these two defendants was dismissed because of lack of proof of venue.

At the time of the order, no one took exception to the trial court's determination that there were two conspiracies. It assumed more importance when Conklin and Hoover were subsequently indicted in the Eastern District, where the resulting indictment was almost identical to the indictment in the Western District. The government apparently agreed that except for minor modifications the case which was presented against Conklin and Hoover in the Western District would be presented against them in the Eastern District.

On motion of the defendants for dismissal on the grounds of double jeopardy, the trial judge in the Eastern District concluded that under the same evidence test, *United States v. Martinez*, 562 F.2d 633 (10th Cir. 1977), the defendants had not sustained the burden of proving that the offense in the Western District was the same as that charged in the Eastern District. The Eastern District trial judge did state, however, that the matter would be reconsidered in

1. It stated:

When, as here, a single conspiracy has been charged and the evidence shows the existence of two separate conspiracies, there are at least two courses open to the Court. In *United States v. Butler*, [494 F.2d 1246 (10th Cir. 1974)], the Tenth Circuit outlined the possibilities; (1) the trial may continue against all defendants, with cautionary instructions to the jury regarding multiple conspiracies, or (2) when the prejudice to some defendants from the spill-over evidence or the possibility of guilt by association cannot be cured by cautionary instructions, the Court may require the government to elect against which defendants it chooses to proceed and the remainder are severed for separate trial. In the circumstances of this case, the selection of either course mandates the same result. Having found that Hoover and Conklin are not members of the conspiracy charged against the remaining defendants, the Court cannot allow the jury to reach a verdict against them on a separate conspiracy, or allow the government to elect to proceed against them, because there is, by the government's own admission, no act or agreement

upon which venue can be laid against Hoover or Conklin in the Western District of Oklahoma, without connecting them to the larger conspiracy. Any agreement of which they were a part, and any act in furtherance of such agreement, took place entirely within the Eastern District. Under the Sixth Amendment to the Constitution of the United States and Rule 18, Federal Rules of Criminal Procedure, venue lies in the district wherein the crime was committed. There being no venue in this district over the criminal acts charged against defendants Hoover and Conklin, as a matter of law the indictment against them here must be dismissed. These defendants are not acquitted, and they may be properly charged and tried in the Eastern District of Oklahoma where the alleged criminal acts occurred.

In accordance with the foregoing, the Court concludes and orders as follows: The motion for judgment of acquittal is denied. The motion for severance of defendants Hoover and Conklin is granted, and the indictment against these two defendants is dismissed for lack of venue.

light of the full trial record in the Eastern District.

The contention of appellants is that the conspiracy as charged and as tried to the jury in the Western District of Oklahoma included all of the available evidence of activities in both districts.

The view which we take is that the appellants were responsible for the dismissal, and that the dismissal was not predicated upon the merits of the case, that is, the insufficiency of the evidence to convict. Thus, there was not an adjudication of insufficiency of evidence whereby defendants were to be adjudged innocent. We do not, therefore, consider it necessary to decide whether there were two conspiracies or one.

The dismissal was predicated upon the failure of the proof to establish that Conklin and Hoover were part of a conspiracy in the Western District. Hence, there was a failure to establish venue. The provable acts which tied them to the conspiracy with the other defendants and Wilkett was their writing of prescriptions and filling them, and the furnishing of the narcotics. All of these acts took place in the Eastern District.

*Prosecutorial Over-Reaching*

The appellants also seek to establish that their motion to dismiss in the Western District does not prevent their jeopardy contention. They say the motion to dismiss on their part was a matter of necessity brought on by prosecutorial over-reaching. They assert that the prosecution forced the jeopardy issue prior to dismissal and that it should have resolved the issue at pretrial.

▪ We see no prosecutorial over-reaching. If there was any failure on the part of the government it certainly does not appear that it was any intentional effort to harass the defendants. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), is not applicable. The government was proceeding in the Western District on the theory that there was one conspiracy, and not, as the defendants assert, on the theory of there being two conspiracies with enough of an overlap in evidence to allow successful prosecution of only one.

In any event the defendants appear to now concede that lack of venue was the reason for the trial's termination, but they contend that lack of venue itself is equivalent to a judgment of acquittal, which gives substance to their contention that former jeopardy exists as the result of the dismissal. We disagree with this. It does appear that the prosecution was unaware of the existence of two conspiracies. Regardless of this, it is not necessary to decide whether there is one conspiracy or two at this point. The sole relevant point is that the judgment of dismissal was based upon the failure to prove venue.

*Nature of Venue*

▪ Venue in federal criminal cases is a question of fact which is part of the prosecution's case. *United States v. Rivera,* 388 F.2d 545 (2nd Cir.), cert. denied 392 U.S. 937, 88 S.Ct. 2308, 20 L.Ed.2d 1396 (1968); and it is not jurisdictional; *United States v. Walden,* 464 F.2d 1015 (4th Cir. 1972), cert. denied 410 U.S. 969, 93 S.Ct. 1436, 35 L.Ed.2d 705 (1973). However, unlike other facts in the prosecution's case, it need only be proven by a preponderance of the evidence; *United States v. Black Cloud,* 590 F.2d 270 (8th Cir. 1979); *United States v. Karavias,* 170 F.2d 968 (7th Cir. 1948); and it can be waived; *United States v. Jercha,* 458 F.2d 1340 (8th Cir. 1972); *Jenkins v. United States,* 392 F.2d 303 (10th Cir. 1968). In fact, it can be waived by implication; *United States v. Marcello,* 423 F.2d 993 (5th Cir.), cert. denied 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970); *United States v. Jones,* 162 F.2d 72 (2nd Cir. 1947).

Venue is, of course, unlike the substantive facts which bear on guilt or innocence in the case. Venue is wholly neutral; it is a question of procedure, more than anything else, and it does not either prove or disprove the guilt of the accused. Thus, Conklin and Hoover did not as a result of the action in the trial court have a resolution of some or all of the merits of the offense charged. The termination of the case was not "a resolution, correct or not, of some or all of the federal *elements* of the offense

**1012**

charged." *Lee v. United States*, 432 U.S. 23 at 30, n.8, 97 S.Ct. 2141 at 2145 n.8, 53 L.Ed.2d 80 (1977), quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (emphasis added); *United States v. McDonough,* 603 F.2d 19 (7th Cir. 1979).

*Summary*

In final analysis the concern is whether the dismissal was on the merits or not. The presence or absence of former jeopardy depends on this factor. Recent decisions of the Supreme Court establish this. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Martin Linen Supply Co., supra*, and *Lee v. United States, supra*. The definitive case on this question is *United States v. Scott*. There it was emphasized that the motion for mistrial is an important sign which tends to indicate that the granting of the motion is a final disposition of the case. The Supreme Court in *Scott* recognized, however, that the basic principle which threads through the former jeopardy rule is that the state with its resources and powers is not to be allowed to make repeated attempts to convict an individual for a single offense, thereby subjecting him to embarrassment, expense, ordeal, anxiety and insecurity. Therefore, the workings of the jeopardy doctrine revolves around guilt or innocence, and it is a second effort to prove guilt or innocence which is subject to the double jeopardy ban.

■ But where, as here, the accused himself brings about the termination of the proceedings on a basis other than adjudication of guilt or innocence, former jeopardy does not take hold.

We need not address whether there was one conspiracy or two; or whether the conspiracy originated in one place or another, because the disposition was not on the failure of the government to prove some aspect of the crime of conspiracy. Rather it failed to prove an element which is more procedural than substantive, namely, venue, or place of trial. The trial court did not reach the issue of guilt or innocence.

The Supreme Court, in *Scott*, quotes from an earlier case, *United States v. Jorn*, 400 U.S. 470 at 484, 91 S.Ct. 547 at 557, 27 L.Ed.2d 543, wherein the late Justice Harlan, who wrote the opinion, said:

> In the [second] situation the defendant has not been deprived of his option to go to the first jury, and, perhaps end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.'

The significant points in deciding whether or not jeopardy has attached and is applicable are: *First*, was the case terminated at the behest of the defendant, and *second*, whether the decision to terminate resulted from an adjudication of innocence. If the end was brought about by the court or the prosecution, it becomes an argument, at least, that the accused has been deprived of his right to be finally judged by the court in which the trial is being conducted.

■ Therefore, it was held in *Scott*, that when the defendant seeks to have the trial terminated without submission to a judge or jury as to guilt or innocence, an appeal by the government from his termination effort can be carried out and there can be retrial.

We hold, therefore, under *United States v. Scott* and its precursors that the defendants were not in jeopardy and that they can be retried in the district where the crime was committed.

*Part II*

*James D. Wilkett v. United States*

Appellant was indicted in the Western District of Oklahoma together with Conklin, Hoover and four other alleged co-conspirators. Following the severance of Conklin and Hoover, the government dismissed its case as to another defendant, and the trial continued against Wilkett and the other three remaining defendants. On De-

cember 16, 1980, the jury returned a verdict of guilty against all four defendants. Wilkett has appealed. On February 18, 1981, which was not long after the termination of the case in the Western District, Wilkett was indicted in the Eastern District of Oklahoma along with Conklin and Hoover. Like the Western District indictment, that in the Eastern District alleges that Wilkett conspired to distribute a controlled substance, Dilaudid, in violation of 21 U.S.C. § 846.

Wilkett moved for a dismissal of the indictment in the Eastern District on the ground that the double jeopardy clause of the Fifth Amendment operated as a bar to the second prosecution. This motion was denied. Wilkett appeals that ruling in this court.

The issue raised by Wilkett's appeal differs significantly from the arguments advanced by Conklin and Hoover. The trial against Wilkett went to completion on the merits in the Western District, and the jury found Wilkett guilty. He is now in prison. Therefore, the question which is to be decided here is whether Wilkett has been tried and convicted of the crimes now charged in the Eastern District. We must conclude that the allegations which are set forth in the indictment which he faces in the Eastern District contains the same allegations as the indictment in the Western District. The former jeopardy provision of the Fifth Amendment would seem to apply to the attempted prosecution in the Eastern District.

The Fifth Amendment, after providing that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia in national service in time of war or public danger, goes on to say:

"Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

So, then, the Fifth Amendment protects against twice being prosecuted and punished for the same offense following an acquittal or conviction on the merits. The protection is against the second prosecution and against multiple punishments for the same offense as well. *See United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975). *See also North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Tipton v. Baker*, 432 F.2d 245 (10th Cir. 1970). It is therefore clear that if the conspiracy charged in the Eastern District is the "same offense" as the conspiracy charged in the Western District, Wilkett's conviction in the Western District bars his prosecution.

On its face, it appears that the Eastern District indictment charges the identical crime as the Western District indictment, because it uses virtually the same language, including the same overt acts. In the case of substantive offenses the test generally used to determine whether or not double jeopardy applies is the same evidence test. If the same evidence would sustain a conviction of the second offense, the double jeopardy clause bars prosecution of the second offense. *Waters v. United States*, 328 F.2d 739 (10th Cir. 1964); *Aiuppa v. United States*, 393 F.2d 597 (10th Cir. 1968), vacated on other grounds, *Giordano v. United States*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); *Robbins v. United States*, 476 F.2d 26 (10th Cir. 1973). Conversely, if each statute requires proof of a fact not required by the other statute, double jeopardy does not prevent prosecution for both crimes. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Goldsmith v. Cheney*, 447 F.2d 624 (10th Cir. 1971).

However, the same evidence test is not always adequate for testing applicability of the former jeopardy principle where the two crimes charged are both conspiracies. Conspiracies frequently involve several or even dozens of overt acts and may extend over several months or years. Thus, it may frequently be possible to show the

existence of a single conspiracy through proof of more than one set of facts. If two charges of conspiracy are in fact based on a defendant's participation in a single conspiracy, the former jeopardy clause bars the second prosecution. *United States v. Wilshire Oil Co. of Texas*, 427 F.2d 969 (10th Cir. 1970), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970); *United States v. Tercero*, 580 F.2d 312 (8th Cir. 1978). As a consequence, it may be necessary to look beyond the question of what evidence will be offered in proof of the two conspiracies, and to determine whether under all the circumstances a single conspiracy is present. On the other hand, the fact that the two conspiracies overlap with regard to members and time period does not necessarily mean that the conspiracies are not the same for double jeopardy purposes. *United States v. Martinez*, 562 F.2d 633 (10th Cir. 1977); *United States v. Wilshire Oil Co., supra.*

Originally, it was the government's position that Wilkett, Conklin, Hoover and the other defendants were all members of one single conspiracy, that is, an agreement which took place in Oklahoma and which was evidenced in part by acts of Conklin and Hoover. After the government had presented its case against all of the defendants, the trial court in the Western District concluded that the evidence showed two separate conspiracies and that Conklin and Hoover had to be severed and dismissed for lack of venue. Based on this ruling, the government now argues that Wilkett was a member of two separate conspiracies and may therefore be prosecuted with Conklin and Hoover in the Eastern District.

It has not been necessary in this appeal to determine whether the trial court was correct in the view that there are two conspiracies here. Here we assume that Wilkett could have been originally prosecuted separately as the result of his involvement in two conspiracies. Even if we were to assume that Wilkett originally could have been prosecuted separately for his involvement in two conspiracies, a review of the indictments and the record in the Eastern District leads to the conclusion that Wilkett

was prosecuted for all of his conspiratorial activities in the Western District.

Turning first to the language of the indictments, we note that one of the two major functions of an indictment is to provide protection from a subsequent prosecution of the same offense. *Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Watson*, 594 F.2d 1330, 1341 (10th Cir. 1979), *cert. denied, Brown v. United States*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *United States v. Sterkel*, 430 F.2d 1262 (10th Cir. 1970).

The precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, 'in case any other proceedings are taken against [the defendant] for a similar offense, ... the record [will] sho[w] with accuracy to what extent he may plead a former acquittal or conviction.' *Sanabria v. United States*, 437 U.S. 54, 65–66, 98 S.Ct. 2170, 2179–2180, 57 L.Ed.2d 43 (1978), quoting *Cochran v. United States*, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704 (1895).

The indictment which was returned in the Western District alleges that "from on or about August, 1979, and continuously thereafter until on or about July of 1980, in the Western District of Oklahoma, *the Eastern District of Oklahoma*, and elsewhere," Wilkett, Conklin, Hoover and four other named defendants conspired to distribute Dilaudid in violation of 21 U.S.C. § 846. (emphasis added) The Eastern District indictment alleges that "from on or about the 21st day of March, 1979, and continuously thereafter until on or about the 9th day of June, 1980, in the Eastern District of Oklahoma," Wilkett, Conklin and Hoover conspired to distribute Dilaudid in violation of 21 U.S.C. § 846. About the only difference between the two indictments is that the Eastern District conspiracy is alleged to have commenced a few months earlier than the conspiracy in the Western District. The general conspiracy allegations of the Western District indictment appear to be inclusive of

the allegations in the Eastern District indictment.

After the introductory paragraphs, the indictments go on to list a number of overt acts allegedly committed in pursuit of the conspiracies and which, of course, evidence the conspiracies. The first four acts listed in each indictment are identical, and deal with the alleged scheme pursuant to which Conklin wrote and Hoover filled prescriptions for Dilaudid in the name of Wilkett and others. The last overt acts listed in each indictment differ. The Western District indictment alleges that Wilkett transferred Dilaudid to co-conspirator Harold Dean Behrens, who in turn distributed to co-conspirator Fred Weed, "for purposes other than accepted medical uses." The Eastern District indictment, on the other hand, states that Wilkett possessed the Dilaudid "with intent to distribute for purposes other than legitimate medical use, need and purpose." In our view, the listings of overt acts in the two indictments are entirely consistent with a conclusion that the Eastern District indictment is based in large part, if not entirely, on the same criminal activity which is covered by the Western District indictment.

Thus, it is clear that the indictment in the Western District included Wilkett's activities in the Eastern District. With the exception of the alleged starting dates of the conspiracies, the indictments on their faces support this conclusion. Furthermore, the Western District indictment was drafted based upon the government's original theory that all of Wilkett's activity occurred pursuant to a single conspiracy. The fact that the trial court concluded that there were two conspiracies does not change the fact that Wilkett was indicted based on all of his criminal activity. *See, Berger v. United States*, 295 U.S. 78, 83, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935). Also of significance is the fact that the government intends to introduce the same evidence in the Eastern District trial which was introduced in the Western District "with minor exception." In the light of the fact that the government presented its entire case against Wilkett before the trial court found that there were two conspiracies, the probability that no new evidence will be presented in the Eastern District supports the conclusion that former jeopardy exists.

Although the same evidence test has its shortcomings in the conspiracy context, the fact that there is not going to be any new evidence in the Eastern District should be scrutinized very carefully. When the government seeks to prove two conspiracies by introducing evidence of distinct overt acts, the same evidence test may not adequately guard against dual prosecutions based on a single conspiracy. Where, as here, the government seeks to convict a defendant of a second conspiracy based on the same evidence, there is at least a strong inference that the defendant is in fact being retried for the same illegal activity. It is possible that the evidence necessary to sustain a conviction in the Western District may not be sufficient to sustain a conviction in the Eastern District conspiracy. If Wilkett had been charged and tried only for his activities in the Western District, the trial in the Eastern District might have involved evidence not introduced and charges not included in the Western District proceedings. However, the government presented all of its evidence against Wilkett in the Western District trial. Since this is so, there isn't anything else that is new or different to be presented in the Eastern District. Wilkett has been indicted, tried and convicted for his activities in both districts and so the government is precluded from seeking to retry him for some portion of his activity which has already been subject to a trial on the evidence. We are of the opinion that, regardless of whether there is one conspiracy or two conspiracies, in the trial in the Western District the government introduced every bit of evidence that it had.

Accordingly we must conclude that the trial court erred in denying Wilkett's motion to dismiss. This order is reversed and remanded with instructions to dismiss the indictment against Wilkett. The portion of the order denying the dismissal of appellants Conklin and Hoover is

affirmed for the reasons that are discussed and considered in Part I of the opinion.